[L. A. No. 13502. In Bank.—September 23, 1932.]

LOUISE F. MILLER, Respondent, v. SOUTHERN CALI-
FORNIA TELEPHONE COMPANY (a Corporation)
et al., Appellants.

Lawler & Degnan for Appellants.

Paul Blackwood for Respondent.

PRESTON, J.—Appeal by defendants from judgment entered upon a verdict awarding plaintiff damages in the sum of $6,000 for injuries sustained as a result of being hit by an automobile driven by defendant Adams, an employee of defendant Southern California Telephone Company, a corporation. The several contentions made by appellants relate to the alleged insufficiency of the evidence to support the verdict and judgment, the alleged award of excessive damages and alleged misconduct of a juror.

The accident occurred on February 15, 1928, about 7:15 P. M., where a crossroad intersects the Los Angeles-San Diego state highway at Del Mar, California. The highway was paved to a width of about twenty feet and on each side

was a fifteen-foot dirt or gravel strip. Respondent was standing back on the graveled portion of the road, awaiting an opportunity to cross from the west to the east side thereof, when appellant Adams from the north, and a limousine and a smaller car from the south, approached the intersection. Unexpectedly the smaller car swerved to the middle of the road and passed the limousine at a point in front or nearly in front of respondent. Appellant Adams, fearing a collision and feeling that his car had been forced off the pavement, turned it on to the gravel; then, suddenly seeing respondent, he turned still further to the right to avoid striking her. This effort, however, was unsuccessful. His car hit respondent on the left knee, threw her forward some distance, turned in a semi-circle and finally came to a stop about thirty feet from where she lay.

Practically all of the evidence bearing upon the issues of negligence and contributory negligence is to be found in the detailed accounts of the accident given by respondent and by appellant Adams. Their testimony is not free from conflict. From it the jury could have believed that said appellant exercised ordinary care in that, confronted by imminent peril, he took the only course which seemed possible if an accident were to be avoided. However, the jury chose to base its verdict upon that evidence supporting the allegations of negligence on the part of the driver of the car. This conclusion, reached under conflicting evidence upon an issue of fact, of course, will not be disturbed upon appeal. The record contains evidence to the effect that respondent was standing fifteen feet from the paved portion of the highway, in a place of apparent safety, waiting for the three cars to pass, when appellant's car turned or was forced off the pavement and that the driver thus had a space of fifteen feet in which to travel without hitting her or colliding with either of the north-bound cars. It is true that he was suddenly confronted with the peril caused by one of the north-bound cars attempting to pass the other but in this stress of circumstances he was obliged to use only ordinary care to avoid an accident and it was for the jury to decide under the evidence whether he used such care. They decided adversely to him, evidently drawing the conclusion or inference that by the use of ordinary care he could have

passed between respondent and the approaching cars without striking her. This court has no right on appeal to draw an opposite inference where, as here, the inference of the jury finds reasonable support in the evidence. It may be added that respondent also testified that the two north-bound cars had already passed each other before she was struck and that she was so far off the road that it "didn't enter her head" that appellants' car would come near her. She also claimed, although flatly contradicted by witnesses for appellants, that she was in an area which was or had been marked as a pedestrian zone and that she was carrying a flashlight.

Appellants contend that the evidence was insufficient to show damage from any source to the extent of the $6,000 award. On this issue also the evidence was contradictory and might well have served as the basis for a smaller verdict. However, as said in the case of *Kelley* v. *Hodge Transp. System,* 197 Cal. 598, 610 [242 Pac. 76, 81]: "Unless we are able to say that the award of damages made by the jury . . . was so grossly disproportionate to any compensation reasonably warranted by the facts as presented to us on appeal as to shock the sense of justice and raise at once a presumption that it was the result of passion, prejudice, or corruption, rather than an honest and sober judgment, this court may not exercise the power of revision" (citing many cases). Here competent and sufficient evidence was received to support the award made by the jury. In substance, it showed that respondent, a woman over fifty years of age, was thrown some ten feet, her hat and shoe were knocked off and she found herself with her head on the paved part of the highway and her body on the gravel; that she was in the hospital from February 16th to April 2d, suffering severely, with her left knee broken, her leg cut and bruised and her side black, blue and swollen; that her leg was kept in a basket for nearly three weeks; then in a cast, after which she removed to a hotel where she was around on crutches for several weeks, thereafter using a cane until the healing was complete. She testified that the use of her right leg, to save her left, caused her right knee to swell and pain. Medical witnesses for appellants testified that she was suffering from hyperthropic arthritis in both knee joints, a process of slow

growth which could neither have been caused nor contributed to by the fracture, but the physician who attended her testified: "In my opinion that . . . abnormal deposit of bone in the joint was the result of an inflammation in the joint which was undoubtedly caused by the primary fracture. . . . Those bony spurs are there, and they always will be there. . . . I am of the opinion that that joint will always be sensitive; that there will always be a limitation of motion and that the normal function of the joint will always be impaired." Asked whether it was not common for a person of respondent's age to have arthritis, he replied: "I would say it was not unusual; but also, I would say this: To—not to have it to the extent of presenting the objective bony malformation that is apparent in this case."

█ Lastly, appellants complain of alleged misconduct of a juror and prejudicial error arising from the following incident: Near the close of the trial, at the request of appellants' attorney, the court and counsel retired to the judge's chambers and the attorney stated that at the close of the previous day's session, while R. W. Scott, who was to be a witness for appellants, Mr. Blackwood, respondent's attorney, and others were waiting for the elevator, an elderly lady, later identified as juror Mrs. Katherine D. Jackson, approached Mr. Blackwood and asked what part of the south he came from; that Mr. Blackwood answered and the juror then said in substance: "My husband was a judge in that part of the country at one time. . . . I expected you to charge the jury more than you did and to furnish us with some wonderful oratory at the beginning of the trial", whereupon Mr. Blackwood, in substance, replied that he would save that until later. Because of this incident, said attorney requested the court to declare a mistrial and dismiss the jury. The court replied that he would first consider the matter and interrogate the parties concerned. Court and counsel then re-entered the courtroom and requested Mrs. Jackson and Mr. Scott to step into the judge's chambers. This was done and Mr. Scott, in the presence of the court and counsel, then confirmed the occurrence substantially as above related. Mrs. Jackson, however, claimed that all she said to Mr. Blackwood was, in substance: "We hope we will hear some good old Kentucky oratory", to which he replied: "That will come later on."

The court thereupon conferred with Mr. Davis, another juror, in the courtroom; then returned once more to his chambers with counsel, where the motion for dismissal was renewed upon the ground that Mrs. Jackson had evidenced an interest in the case favorable to respondent, was guilty of misconduct and, in any event, the effect upon her of having been confronted with Mr. Scott's charges would be for her to discredit, if not entirely disbelieve, any testimony subsequently given by him. The court denied the motion and the trial proceeded. Thereafter affidavits on the subject were filed by both parties on motion for new trial but they contained no additional matter.

Appellants do not rely so much upon the contention that the statements of the juror were improper as upon the claim that the necessary effect of the conference in chambers was that the juror would be prejudiced against Mr. Scott when he was called as a witness. But appellants are in no position to urge this complaint as there is no showing whatsoever that they made any objection when the court proposed to investigate the matter. Neither is there any showing that ill will or prejudice toward the witness resulted from the court's action. When called Mr. Scott merely testified to the effect that the portion of the road where respondent stood was traveled continually by automobiles going to the stores and by the bus and that when he examined the highway about February 18th, he found no pedestrian markings on it. His testimony was at most cumulative. Furthermore, from a review of the record it is apparent that appellants suffered no injury from the occurrence. This also is a matter upon which the conclusion of the trial court, unless plainly wrong, will not be disturbed on appeal.

The judgment is affirmed.

Shenk, J., Waste, C. J., Langdon, J., and Tyler, J., *pro tem.*, concurred.

Rehearing denied.