[S. F. No. 15514.  In Bank.—January 23, 1936.]

CAROLINE   KIRSCHBAUM,   Respondent,   v.   P.   H.
McCARTHY, Jr., as Administrator, etc., Appellant.

192

Myrick & Deering and Scott for Appellant.

C. H. Sooy, J. H. Sapiro and Edwin V. McKenzie for Respondent.

CURTIS, J.—On appeal of this cause to the District Court of Appeal, that court modified the judgment of the trial court rendered in favor of the plaintiff upon the verdict of the jury, and reduced said judgment from $50,000 to $25,000, and as so modified, the judgment was affirmed. The plaintiff-respondent petitioned the court for a hearing of said cause after said decision of the District Court of Appeal, which petition was granted. The defendant-appellant filed no petition for hearing after said decision, and was apparently satisfied with the decision of the District Court of Appeal modifying said judgment. As the order granting the petition of respondent has set the case at large, all questions presented by the appeal are now before us. The only question, however, argued by counsel for the respective parties after the transfer of said action

to this court, is the one involving the verdict of the jury which awarded the respondent damages in the amount of $50,000. The record does not show that the question of excessive damages as fixed by the verdict was raised by the appellant on his motion for a new trial, but does show that it was not raised in his opening brief and that the first reference to that subject is to be found in appellant's reply brief. The inference is quite persuasive that had the amount of damages been so glaringly excessive as to suggest that it was the result of passion, prejudice, or corruption, such infirmity in the verdict would have immediately occurred to appellant upon its rendition by the jury and long before appellant was called upon to prepare his reply brief.

The respondent at the time of her injury was thirty-eight years of age, and was employed at St. Mary's Hospital in the city of San Francisco at a salary of $100 per month, two meals, and laundry, equivalent to about $140 per month. Her life expectancy was 28.9 years. Computed upon the basis of her life expectancy, her aggregate earnings up to the time of her death would be over $48,000. She had expended $2,928.96 for medical and hospital services due to the injuries sustained by her in the collision with the automobile of appellant's testator. Before sustaining said injuries, she enjoyed normal health. She was a professional registered nurse, and had been employed at the Woodland Hospital for seven continuous years, and at the end of that period was superintendent. She also was an army nurse for a short time. As a result of her injuries, she is entirely incapacitated from engaging in any gainful or remunerative employment. She will require medical attention during the balance of her life, estimated by the medical experts to be the sum of $300 per annum, or almost $9,000 during her lifetime. She is unable to leave her house without an attendant constantly with her. She suffers distressing pains almost continuously. She is perpetually nauseated, and this condition prevails even when she is in bed, where she is confined sixty per cent of her time. While the injury did not fracture the skull, it inflicted upon her an incurable brain condition which manifests itself in loss of memory, failure of coordination, dizziness and ataxia, or inability to walk straight. She is not only totally disabled in so far as being able to engage in any industrial occupation, but her

condition is progressive, and will in all probability deteriorate rather than improve. As one of the physicians testifying in the case describes her condition, ''The future is very serious for her—it may go on to true insanity. She may go into epilepsy, or she may become such an invalid that there will be some intermittent disease which may prove fatal.'' The testimony of the other specialists called on behalf of the plaintiff is in thorough accord with that of the physician just quoted. A claim is made by appellant that respondent was malingering, but this claim was completely refuted by her attending physician and by the specialists called in to examine her. The verdict shows conclusively that the jury was not impressed with such claim.

We appreciate that the verdict in this case is an exceedingly large one, but can we say in the light of the evidence in the case, the striking characteristics of which are set forth above, that it is excessive? ■ It may be true that interest on the amount of the verdict would exceed the amount of plaintiff's earnings at the time of her injury and her probable future earnings if she had not sustained her injuries, yet while this rule is sometimes applied to death cases it is not the true rule to apply in measuring damages in personal injury cases. (*Morgan* v. *Southern Pacific Co.*, 95 Cal. 501 [30 Pac. 601].) Especially should this rule not control in the present case where the evidence shows, not only that the respondent is totally and permanently disabled from following any gainful pursuit, but also that she had expended a considerable sum of money for medical and hospital services; that she will be required in the future and as long as she lives to expend further sums for like purposes; that she will require the services of an attendant whenever she leaves home; that she suffers from nausea and other ailments at all times and even when she is confined to her bed; that her condition is progressive, is gradually growing worse, and may result in insanity, or ''she may go into epilepsy''. All these matters, and probably others, were proper to be taken into consideration by the jury in fixing the damages of the respondent and by the court in passing upon the question as to whether the verdict of the jury was excessive. ■ As has been frequently held, there is no hard and fast rule applicable to the matter of determining the question of the excessive damages in any particular case, and

every case must be adjudged by reference primarily to its own facts and circumstances. (8 Cal. Jur. 838, and authorities cited.) It is equally well settled that: "Unless we are able to say that the award of damages made by the jury and sustained by the trial court was so grossly disproportionate to any compensation reasonably warranted by the facts as presented to us on appeal as to shock the sense of justice and raise at once a presumption that it was the result of passion, prejudice, or corruption, rather than an honest and sober judgment, this court may not exercise the power of revision. (8 Cal. Jur. 834; *Holmes* v. *California Crushed Fruit Co.*, 69 Cal. App. 779 [232 Pac. 178]; *Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237 [116 Pac. 513].)" (*Kelley* v. *Hodge Transportation System*, 197 Cal. 598, 610 [241 Pac. 76]; *Miller* v. *Southern California Tel. Co.*, 216 Cal. 391, 394 [14 Pac. (2d) 519].) Under the rule announced in the above-cited cases, we are of the opinion that the facts in this case foreclose this court from in any way interfering with the verdict of the jury fixing the amount of plaintiff's damages. The contention of appellant that the judgment is excessive cannot be sustained.

In all other respects the opinion of the District Court of Appeal correctly determines the questions presented on this appeal. We, therefore, adopt that portion of said opinion as the opinion of this court upon the questions therein discussed. It is as follows:

"This is an appeal from a judgment on a verdict rendered in the court below in favor of the plaintiff for the sum of $50,000, for personal injuries received by her in a collision between a Ford automobile driven by her and a Duesenberg automobile driven by the defendant's testator. The collision occurred at the intersection of Cole and Hayes streets, in the city and county of San Francisco, about 10:30 a. m. on June 26, 1931. The grounds on which appellant relies for a reversal of the judgment will be dealt with in the order of their presentation, and such facts as appear to be pertinent to a determination of such questions will be given as the occasion for their statement arises.

"1. Appellant asserts the evidence shows, without conflict, that the Duesenberg first entered the intersection and had proceeded more than half way across the intersecting street when the Ford entered the intersection at a high rate of speed and drove directly into the path of the Duesenberg.

We assume from this assertion that it is appellant's contention the evidence fails to establish any negligence on the part of the driver of the Duesenberg, or that it does establish, as a matter of law, the existence of contributory negligence on the part of the driver of the Ford. In either case the verdict would not be sustained. The effect of the verdict of the jury in favor of the plaintiff was, of course, a negation of both contentions. As the finding of a jury, or of a trial court, on a question of fact, will not be disturbed by this court if there is any substantial evidence adduced to support it, our present task is to ascertain what evidentiary basis there is for these implied findings.

"The two intersecting streets meet at right angles. Cole street runs generally north and south, while Hayes street has a proximate easterly and westerly direction. They are each approximately forty feet wide from curb to curb. On Hayes street are two lines of street-car rails, in the center thereof, occupying a total of fifteen feet seven inches of the width of that street. During the brief space of time immediately preceding the collision, a street-car was moving slowly along the northerly tracks, in a westerly direction, across the intersection, while the Duesenberg was traveling southerly on Cole street, to the north of the intersection, and some space to the west of the center line of that street. This automobile entered the intersection, passed behind, or to the east of the rear of the street car, and struck the Ford on the latter's left, or northerly side, at a point somewhere south of the center line of Hayes street. From this statement of the situation it becomes at once apparent that the question of which automobile entered the intersection first, if not the controlling factor, is at least of primary importance in the determination of the issue presently under consideration. By the provisions of the California Vehicle Act in effect at the time of this collision, a vehicle first entering an intersection has right of way over one subsequently entering; and when both enter at the same time the vehicle to the right has the right of way. As the Ford entered the intersection in question to the right of the Duesenberg, if both cars entered simultaneously, the Ford would have the right of way.

"The testimony of two witnesses only is important in determining this question. McCarthy, the driver of the Duesenberg, did not see the Ford until within a few feet of the point

of the collision, and hence did not see it enter the intersection, but appellant argues, from other matters testified to by the witness, that it would have been impossible for the Ford to have entered the intersection until after the Duesenberg had done so. If full credit be given his testimony, such a conclusion could properly be drawn therefrom, but obviously the jury did not so consider it. The witness C. R. Pollard was the motorman on the street car which crossed the intersection just ahead of the Duesenberg. While he did not see either vehicle in the act of entering the intersection, he testified to his observations of the positions, directions, speeds and distances of each vehicle, as well as that of the street car he was operating, at the time when the collision appeared probable, and from these conditions gave his conclusion, both orally on the witness stand, and in a written statement introduced in evidence (defendant's exhibit H), that the Ford entered the intersection first. Without a detailed relation of the testimony of this witness, suffice it to say that his conclusion, based upon his observations above referred to, appear to us to be much more persuasive than does the conclusion to the contrary drawn from the testimony of the witness McCarthy. In our opinion, the evidence amply supports the conclusion that the Ford entered the intersection at a point of time when it had the right of way over the Duesenberg.

''Several other matters in connection with this ground of appeal may well be mentioned here. The driver of the Duesenberg asserted that he never passed over the center line of Cole street, but was at all times on his right, or the westerly side of that line, and that the collision occurred while his car was in that position. The weight of evidence, however, appears to be that he swerved to the left or easterly side of the center line of Cole street, in passing the rear of the street car, and that the collision occurred somewhere in the southeasterly quarter of the intersection. The speed of the Ford as an element in the situation does not seem to have received much attention. However, there is sufficient evidence in the record to justify the belief that that car was not traveling at any excessive or unlawful rate of speed at any time, at least within the intersection. From the foregoing observations it follows that it is our opinion the evidence in this case is sufficient to sustain the verdict of the jury in favor of the plaintiff.

■ ''2. Appellant next challenges instruction X given to the jury by the trial judge. It is in these words: 'You are instructed that plaintiff had a right to assume that any person driving in a southerly direction on Cole street would drive on the westerly side of said Cole street across the intersection, and that no vehicle would approach her from the left at a time when her car was beyond and to the east of the medial line of Cole street. This, of course, does not mean that any driver of an automobile has a right to proceed blindly and in disregard of danger which is obvious or which, by the exercise of ordinary care could be obvious, because it is at all times the duty of each person to exercise ordinary care; and this is true even though the negligence of another person caused the danger. It is for you to determine, of course, as I have repeatedly advised you, the facts of the case. It is for you to say whether the car of the plaintiff passed the medial line at the time of the asserted collision.' We find no error in the giving of this instruction. When considered in connection with the other instructions given, and the asserted circumstances of the case, it correctly states the law.

■ ''3. Appellant's motion for a new trial in the court below, there denied, was based in part on the ground of newly discovered evidence. It is here contended that the lower court was in error in denying the motion made on that ground. The witnesses from whom the new evidence was proposed to be elicited were Mrs. Fambrini, Dr. Burns and Angelo Cabano. The granting of a new trial upon the ground of newly discovered evidence is largely discretionary in the trial court, and the action of that court will not be disturbed on appeal unless a case of abuse of discretion is clearly disclosed by the record. It should not be granted where the moving party has not shown due diligence in discovering and producing the new evidence, nor where the same is merely cumulative, nor unless it is of such a character as to indicate that it will render a different result probable on a new trial of the action. Tested by these rules we will examine this point made for reversal. The trial below began on December 13, 1932, and did not conclude until the evening of December 30, 1932. On the day the trial opened, Mr. McKenzie made an opening statement in behalf of plaintiff in which he stated in part: 'We propose to show that at or about quarter after ten on June 26th Miss Kirschbaum left St. Mary's Hospital to make cer-

tain rounds in the course of her duties, and at that time one of the Sisters asked her to take home a patient, a clinical patient, who was there present, and that lady's name was Mrs. Fambrini . . . Miss Kirschbaum drove the car and Mrs. Fambrini got into the car. They proceeded down Hayes Street, that is, towards the Ferry. They drove along Hayes Street on the southerly side of Hayes Street down in this direction, and traversed the projected property line of Cole Street. . . . ' From this statement it is apparent defendant had full notice, several weeks ahead of the close of the trial, of the existence of this witness, and of the character and importance of her testimony. Under these circumstances we are not impressed with the diligence shown. It may be true, as contended, that defendant relied on her being called by the plaintiff, but we suggest that counsel should not, in presenting their case, rely too much on a prediction of what their opponent may do.

"The witness Burns was a practicing physician of San Francisco, where the trial was held, and could have been called by defendant at any time. His attendance on the plaintiff was known to defendant before the trial began.

"There were two conflicting affidavits presented on the motion for a new trial, respecting testimony expected to be given by the witness Cabano. Not only is the diligence shown in his discovery doubtful, but the value and character of the testimony which he might reasonably be expected to give, in the light of these two affidavits, is too doubtful to justify the reversal of the lower court's ruling on this motion.

"4. In appellant's reply brief, exception is taken to the giving of instruction V. This instruction correctly states the law and does not invade the province of the jury."

The judgment is affirmed.

Langdon, J., Conrey, J., Shenk, J., Thompson, J., Seawell, J., and Waste, C. J., concurred.