[Civ. No. 15535.   Second Dist., Div. Three.   June 11, 1947.]

CHARLES MILTON CARPENTER, a Minor, etc., Appellant, v. HUGH C. GIBSON et al., Respondents.

[Civ. No. 15536.   Second Dist., Div. Three.   June 11, 1947.]

LUCIA JANE CARPENTER, a Minor, etc., Appellant, v. HUGH C. GIBSON et al., Respondents.

Morris Lavine for Appellants.

Jennings & Belcher for Respondents.

SHINN, Acting P. J.—In these consolidated actions by minor plaintiffs to recover on account of injuries sustained in an automobile collision, separate verdicts were returned in favor of defendants, and judgments were entered accordingly. Plaintiffs made a motion in each action for a new trial, the motions were denied, and they have appealed from the judgment in each case and have attempted to appeal from the respective orders denying their motions for new trial.

Plaintiffs, aged, respectively, 12 and 7 years, were riding with their father, Charles H. Carpenter, M. D., who was returning them to school in the middle of the day. Defendant Eva Gibson was driving a car belonging to her husband, Hugh C. Gibson, with his consent and allegedly as his agent.

The finding, implicit in the verdicts, that the collision of the two cars resulted solely from the acts of Dr. Carpenter and without negligence on the part of Mrs. Gibson, is challenged on the appeal, the contention being that the evidence demonstrated as a matter of law that Mrs. Gibson was driving her car, a Willys, in a negligent manner when it collided with Dr. Carpenter's Cadillac. Mrs. Gibson was driving east on Patterson Street (30 feet wide) and Dr. Carpenter was driving north on Highland (58 feet wide) in Glendale, as they approached a right-angle intersection of the two streets. The surfaces of the streets were described as very rough and the streets and the weather as dry. Mrs. Gibson testified that she was driving at 20 miles an hour and that Dr. Carpenter was driving at a speed which she judged to be 45 miles an hour. The right front fender of the Willys struck the left

front fender of the Cadillac. The Willys was turned around in its tracks so that it was headed west, and the Cadillac proceeded for another 40 feet or more until it came to a stop. The Cadillac left skid marks of 10 feet to 14 feet before the point of impact, and extending 34 feet to 42 feet beyond that point; the Willys left only "brush" marks as it was shoved around. The collision occurred in the southeasterly area of the intersection, 38 feet east of the west curb of Highland and 10 feet north of the south curb of Patterson. Since the negligence, if any, of Dr. Carpenter was not to be imputed to the minor plaintiffs, the sole question on the first point is whether there was substantial evidence, or reasonable inferences from the evidence, that Mrs. Gibson was not guilty of negligence. The answer depends upon the speed at which she was driving, considered with the surrounding circumstances, and the precautions which she took to detect and avoid danger. A speed of 20 miles an hour was not in and of itself a negligent speed as a matter of law. Whether it was a reasonable and prudent speed depended upon the surrounding conditions, including the observations which Mrs. Gibson made in approaching and passing through the intersection. As she approached Highland Avenue she passed in front of a residence on the south side of Patterson and she could then see almost a block south of Highland. The house was about 100 feet west of Highland and in her testimony she indicated a point from which she looked to her right and from this point, it is conceded, she would have had a view of Highland for at least 200 feet south of Patterson. She testified that she took a good look south on Highland for the duration of "probably about a second"; that at that time she was going about 20 miles an hour and that she saw no vehicle approaching from the south. She then looked toward the north and saw no vehicle approaching. She was then about at the intersection. She entered the intersection and looked again to her right, when she saw the Carpenter car approaching at about 45 miles an hour. She realized the imminence of a collision and endeavored to stop. Dr. Carpenter testified in his deposition that he was driving about 25 miles an hour, that he did not know where the front of the Willys was with relation to the west curb line of Highland when he first saw it; that he was depending on his "side vision" to locate any cars, and that they could not be located by depending upon "side vision." He testified that as soon as he saw the Willys car he immediately applied his brakes and that he judged it was

coming at about 35 or 40 miles an hour. Ivan A. Robinson, a Glendale traffic officer, came to the scene of the accident, made an investigation and talked with Dr. Carpenter. He testified that the latter said, "I was driving north on Highland approximately 25 to 30 miles per hour and I did not see the other car until it was nearly on top of me, and I slammed on my brakes but could not stop." The jury were justified in believing that Dr. Carpenter was driving at about 45 miles an hour, that he did not see the Gibson car as it entered the intersection and crossed through the west half of Highland, nor until it was within a comparatively few feet of him, and that he did not attempt to slacken his speed until he applied his brakes a short distance before the skid marks commenced. In this view of the facts it would appear that Mrs. Gibson, although she looked to her right, failed to see a car that was approaching at 45 miles an hour until it was too late to avoid a collision with it. That she could have seen the car cannot be questioned, but her failure to see it might have resulted from a failure to anticipate that a car would be approaching at such a speed. A fair inference would be that she did not anticipate the approach of such a fast-moving car and therefore failed to look far enough to the south on Highland. But it must be assumed by us that she did look, as she testified, and only saw the Cadillac when it was too late. An instruction was given at the request of plaintiff that a speed in excess of 25 miles an hour in a residence district is prima facie unlawful, and we may assume, from the fact that plaintiffs requested that instruction, that the accident occurred in a residential district. The jury, in determining whether Mrs. Gibson looked carefully, no doubt took into consideration the speed of the Carpenter car and were of the opinion that Mrs. Gibson was not negligent in failing to anticipate the approach of a car at that speed. She entered the intersection first and therefore had the right of way. This, of course, would furnish no excuse for a failure to exercise care in her driving, but it was one of the circumstances to be weighed by the jury. Appellants argue that if Mrs. Gibson had looked carefully before entering the intersection she would have seen the Carpenter car, that to look carelessly is no better than not to look at all, and that to look in such a manner as not to see objects which are in plain sight is to look carelessly. Upon this reasoning findings of negligence have often been upheld upon evidence of conduct comparable to that of Mrs. Gibson. If the jury had made such a finding we would not hesitate

to uphold it. But appellants' argument fails to recognize the difference between what may or may not reasonably be characterized as negligent conduct, and what must be so classified. As to the former, the decision of the jury is conclusive on appeal; as to the latter, the question is one of law. From a consideration of the evidence as to the speed of the Carpenter car and the circumstances mentioned, we are unable to say that Mrs. Gibson's conduct, as described by her, could not reasonably be reconciled with the exercise of ordinary care or, in other words, that that question was one for the jury. (See *Breland* v. *Traylor Eng. & Mfg. Co.*, 52 Cal.App.2d 415 [126 P.2d 455]; *Kirschbaum* v. *McCarthy*, 5 Cal.2d 191 [54 P.2d 8]; *Lundgren* v. *Converse*, 34 Cal.App.2d 445 [93 P.2d 819]; *De Priest* v. *City of Glendale*, 74 Cal.App.2d 464, 471 [169 P.2d 17].)

The court gave an instruction at the request of defendant, reading as follows: "You are instructed that if you find from the evidence that Dr. Charles H. Carpenter, the driver of the Carpenter automobile involved in the accident, was negligent and that such negligence, if any, was the sole proximate cause of the accident, your verdict must be in favor of defendants and against plaintiffs." It is claimed that it was error to give this instruction, for the reason that the defendants pleaded that the accident was unavoidable and that it was not pleaded that Dr. Carpenter's negligence was the cause of the accident. It is said, "the instruction was very evidently an attempt to impute negligence to the plaintiffs' guardian ad litem," etc., and that plaintiffs, being guests, were not chargeable with his negligence. Such was not the purpose or the effect of the instruction. The law was fully and correctly stated in other instructions.

The jury was instructed at the request of plaintiffs that if it should be determined that the defendants, or either of them, were negligent, and that such negligence was a proximate cause of the injury to the plaintiffs, they should then find what damages the respective plaintiffs had suffered and return verdicts for the amounts thereof. Also, "Even if it should appear to you from the evidence in this case that there was negligence on the part of Dr. Carpenter, one of the parents of the plaintiffs, in the manner in which he operated his automobile at or near the intersection, such acts or omissions of Dr. Carpenter may not be imputed to the plaintiffs, as minor children, and shall not constitute a bar to recovery by them, if otherwise they are entitled to recover." Another

instruction read: "If you find from the evidence, that Eva Gibson, in the operation of an automobile upon a public highway, failed to exercise ordinary care in looking for or anticipating the presence of and seeing the Cadillac automobile at all times, and that such failure was a proximate cause of the injury to the respective plaintiffs, then I instruct you to return a verdict in favor of the respective plaintiffs."

The criticized instruction, read with the others, could not reasonably have been understood as stating that the negligence of Dr. Carpenter, if it contributed proximately to the accident, would have constituted a defense. The question was, of course, whether the conduct of Dr. Carpenter—the manner in which he drove—was the sole cause of the accident. It appears to be the theory of plaintiffs that the jury was required to determine whether Dr. Carpenter was solely responsible for the accident, without taking into consideration whether he was driving carelessly. This would have been extremely difficult. Under the circumstances Dr. Carpenter could not have been solely responsible unless he had also been negligent. As applied to the evidence, the instruction meant only that if the jury determined that Dr. Carpenter was driving at a speed that was not prudent and reasonable, or if he was not exercising care to observe the approach of other vehicles, and if this conduct on his part was the sole cause of the accident, the verdict must be in favor of defendants. There is no reason to doubt that the instruction was so understood by the jury. We think the jury would have been confused by an instruction that in determining whether Dr. Carpenter's acts were the sole cause of the accident, the jury were not to consider whether in the commission of those acts he failed to exercise ordinary care. The objection to the instruction is hypercritical.

█ The third assignment of error relates to the interrogation of Officer Robinson on cross-examination with relation to the statement of Dr. Carpenter, which we have already quoted. The objection was on general grounds and the further ground that Dr. Carpenter's statement was a privileged communication. Plaintiffs cite sections 484, 486, 487 and 488 of the Vehicle Code. These sections require drivers of vehicles involved in an accident resulting in injury or death to make a written report to the highway patrol or police department upon a form approved by the department, and such reports are declared to be confidential and not admissible in evidence in any civil or criminal trial arising out of the accident, with some exceptions not material here.

It was not shown that the testimony of the officer was a disclosure of a statement made by Dr. Carpenter in any report made pursuant to the requirements of the Vehicle Code. The Vehicle Code does not declare that statements made at the scene of the accident by the participants therein are inadmissible, but only that the required reports may not be used as evidence. It was not shown that the testimony of the officer was an oral statement of Dr. Carpenter's report or part of it, and the statement was therefore not confidential. (*Dwelly* v. *McReynolds,* 6 Cal.2d 128 [56 P.2d 1232]; *Stroud* v. *Hansen,* 48 Cal.App.2d 556 [120 P.2d 102]; *Inouye* v. *McCall,* 35 Cal.App.2d 634 [96 P.2d 386].) Furthermore, Dr. Carpenter's statement to the officer differed in no substantial respect from the testimony he gave at the trial.

A letter written by Dr. Carpenter to the principal of the school attended by his son Charles some eight months after the accident, was received in evidence over plaintiffs' objection. It read, in part: "This is to certify that Charles Milton Carpenter has been having considerable trouble with his right knee and both hips, which has been more marked in the last two or three months." It is now objected to upon the ground that it was hearsay as to the plaintiffs and that its use was not proper cross-examination. Dr. Carpenter had given expert testimony as to the condition of his son and we see no reason why his statements on that subject should not have been received in evidence. If they were consistent with his testimony, no harm could have resulted; if they were inconsistent, it was proper to place them before the jury as part of the cross-examination.

One of plaintiffs' witnesses was Louis J. Fuller, a Lieutenant of Police, an expert in physical laws concerning the operation of motor vehicles and their movements in collisions. He was shown photographs of the cars as they came to rest after the accident, which photographs also showed certain skid marks and brush marks on the pavement, and he was asked a hypothetical question describing the cars and assuming that the marks were of the dimensions we have already stated. In answer to the question, he gave it as his opinion that the Cadillac was going in the neighborhood of approximately 25 to 28 miles an hour. Plaintiffs made a motion for a new trial, urging, among other grounds, that of newly discovered evidence. A few days after the trial was concluded, Dr. Carpenter consulted a Mr. Harper, another expert in the field of motor vehicle collisions, and had him

examine the evidence as to the circumstances of the collision. Mr. Harper made affidavit for use on plaintiffs' motion for a new trial, in which he stated his opinion to be that the Gibson car was going somewhere between 31 and 35 miles per hour, and that the Cadillac was going at about 25 miles per hour when they collided. It is urged that the evidence consisting of Mr. Harper's opinions was newly discovered and that it was of such weight and value as would probably have led to a different verdict on a retrial of the action. The motion upon this ground was so obviously without merit as to require slight comment. Several years elapsed between the date of the accident and the trial. Plaintiffs produced some expert testimony in the field of Mr. Harper's special training. No good reason was shown why Mr. Harper could not have been produced at the trial, except that he was discovered after the trial had been concluded. It appears that he was discoverable at all times after the date of the accident. Furthermore, the evidence was purely cumulative of the testimony given by Dr. Carpenter and Lieutenant Fuller, and, finally, we can see no reason why the trial judge should have considered that the opinion of Mr. Harper as to the speed of the cars would have had such persuasive force with the jury as to render it probable that upon another trial Mrs. Gibson would have been found guilty of negligence. It was the duty of the trial judge to deny the motion for new trial unless it appeared that the alleged newly discovered evidence would probably result in a different verdict. (*Proctor* v. *Smith*, 214 Cal. 227, 234 [4 P.2d 773]; *Van Der Veer* v. *Winegard*, 41 Cal.App.2d 518, 521 [107 P.2d 97].) The order denying the motion is sustainable upon each of the grounds mentioned. The evidence of Mr. Harper would have been cumulative, only slight diligence had been shown in contacting this expert witness, and the evidence, itself, would have been of problematical value. An order denying a motion for a new trial will not be reversed except for a manifest abuse of discretion. The order was proper and not subject to criticism.

The judgments are affirmed. The attempted appeals from the orders denying motions for new trial are dismissed.

Wood, J., and Kincaid, J. pro tem., concurred.

A petition for a rehearing was denied July 2, 1947, and appellants' petition for a hearing by the Supreme Court was denied August 7, 1947. Carter, J., voted for a hearing.