[Civ. No. 25079. Second Dist., Div. One. Oct. 6, 1961.]

JERRI MORNINGRED, a Minor, etc., Appellant, v. GOLD-EN STATE COMPANY, LTD. (a Corporation) et al., Respondents.

McCament & Willis and McGrew Willis for Appellant.

Schell & Delamer, Joseph A. Bender and Henry F. Walker for Respondents.

FOURT, J.—This appeal is from the judgment entered after a jury verdict in favor of the defendants in an action for personal injuries.

A résumé of some of the facts is as follows: There was no disinterested eyewitness to the accident which occurred on June 11, 1958, at about 12:45 p. m. in the Hansen Dam Trailer Park in Pacoima, California.

The appellant was 4 years, 1 month and 1 day of age at the time. Appellant and her family lived in a trailer in space numbered 31 in the above trailer park. The accident occurred on the circular roadway in the vicinity of trailer space numbered 13. The defendant driver, Adair Hall, was operating a milk truck on the roadway; he had made a delivery at trailer numbered 13 and was in the process of leaving when the accident occurred.

According to defendant Hall, he started the truck motor, looked around and ahead, started forward and had gone no farther than 10 to 12 feet reaching a speed of about 3 to 4 miles per hour when he heard a scraping noise. He thought it was a wire under the vehicle and stopped the truck to remove it. It was then that he saw plaintiff for the first time, approxi-

mately two-thirds the length of the truck back with her head toward the outside, a grass area, with no part of her body under the truck. The tricycle upon which she was riding had caused the scraping sound. Plaintiff sustained severe injuries.

The trailer park was posted with signs indicating that children were in the area. Hall was aware that children were nearby. A birthday party was in progress at trailer 13 attended by 10 to 15 children in the enclosed yard thereof. There was no evidence that plaintiff was among them. There was no evidence as to where plaintiff came from or where she was at any time on the occasion here involved, excepting after the accident.

Defendants Golden State and Foremost Dairies owned the milk truck and defendant Hall was in their employ and in the course of his work at the time of the accident.

The first contention of appellant is that "It was prejudicial error on the part of the trial court to deny plaintiff's motion made prior to trial to strike from the answer the affirmative defense of contributory negligence of the child and such error and the prejudicial effect thereof was not cured by the court subsequently granting such motion on the third day of trial."

Chronologically, the following occurred: On September 2, 1958, plaintiff, a minor by her guardian *ad litem* filed a "COMPLAINT FOR PERSONAL INJURIES." Thereby, the minor plaintiff sought both general and special damages predicated upon the alleged negligence and wanton misconduct of the defendants.

The "ANSWER TO COMPLAINT" was filed October 2, 1958. The alleged contributory negligence of the minor plaintiff was set forth in a second and separate affirmative defense.

The "PRE-TRIAL CONFERENCE ORDER" was filed June 11, 1959. Among other things, it incorporated the pretrial statements submitted by both parties.

Insofar as is pertinent to this particular issue, it was there *stipulated* that:

"2. Plaintiff Jerri Morningred was 4 years of age at the time of the accident." One of the issues as set forth in the "PRE-TRIAL CONFERENCE ORDER" was "3—Contributory negligence."

Prior to the opening of the jury trial counsel for plaintiff, among other things, moved to strike from the answer the second affirmative defense of contributory negligence of the

child and to amend the pretrial order to delete the issue there-from.[1]

The reporter's transcript discloses that after the jury panel was sworn, another recess was taken. In chambers, out of the

[1]The reporter's transcript discloses the following in pertinent part:

"MR. McCAMENT: . . . At this time I wish to make a motion to strike Defendant's [sic] answer prior to trial, their second affirmative defense contributory negligence, and the third affirmative defense of imputed negligence, and to amend the pre-trial order and delete therefrom said issues. Those issues—

"MR. BENDER: I object to the motion, and this is not the proper time. The pre-trial order has been—lines two through four, and the law in [sic] motion matters have all been completed. Further—

"MR. McCAMENT: May I state, your Honor, that the pre-trial memorandum is somewhat ambiguous in that respect, because it states one of the issues as contributory negligence involved in this case. We are dealing in terms of contributory negligence, supposedly, of a child, parents' imputed negligence, and so forth. None of these, which are really clarified. . . .

"THE COURT: With particular reference to this, I will take this under advisement, gentlemen. . . .

"MR. McCAMENT: . . . I would like to indicate to the Court that it is imperative that we do have a ruling on this motion for the reason that Counsel, if he should seek to introduce evidence of contributory negligence and imputed negligence, during the course of the trial, the proper objection to such introduction of evidence will be that it is beyond the scope of the Pleadings, and to allow such evidence to come in prior to the ruling of the Court on the motion, would prejudice the Jury insofar as the issue of contributory negligence is involved here.

"THE COURT: If you feel, Mr. McCament, that this motion should be taken under consideration and considered by the Court, I consider it a very poor motion. Then I will simply put this case off calendar upon the grounds that it is not yet ready for trial, in that these motions should have long since been made, and the Pleadings taken care of.

"Now, we can either proceed and I will decide this just as soon as I possibly can. I realize . . .

"MR. McCAMENT: I am just pointing out the position I am placed in.

"MR. BENDER: May I be heard?

"THE COURT: All right. I suggest that you refrain from putting in the amount of specials. You will be permitted to put them in, but until such time as this is decided, so far as special damages are concerned, let us not put them in. Secondly, refrain from urging contributory negligence in regard to this child of—how old—four years old at the time of the accident—until this matter is settled.

"MR. BENDER: All right. . . .

"MR. McCAMENT: I would state most strongly, your Honor, that this is mere sham, and as counsel well knows, contributory negligence is not a part of this case when a four-year old child is involved. It seems to me that the law is well settled on this. It seems to me that the law is well settled in this jurisdiction, as well as throughout the United States that contributory negligence is not a factor with a child of four years. A four-year old child cannot be contributorily negligence [sic] as a matter of law.

"THE COURT: Mr. Bender, I have given you before certain cases indicating that a child of this age, approximately this age, cannot, as a

presence of the jury, the trial judge denied the plaintiff's motion.[2]

The trial judge explained the function of an opening statement to the jury. After telling the jury that the opening

matter of law, be charged with contributory negligence. Have you a case that you can give me?

"Mr. Bender: Not at this moment, your Honor, because I was not prepared to meet this matter. I have been caught by surprise. . . .

"The Court: I understand. But the problem is quite a simple one. I have given you cases in California. There is available to you, of course, the opportunity of Shephardizing these cases which are squarely in line, and you may prepare to answer these by noon. It is now 25 minutes before 12:00.

"Mr. Bender: Your Honor, if it were only a question of cases bearing on the question of whether or not a minor may be chargeable with contributory negligence, I would say that probably that is adequate time, but this relates to the other subject, and that is whether or not the defense as to the parents is to stand, and that reopens an entire question.

"The Court: Well, let me ask you this, Mr. Bender. Do you feel that the negligence of the parent can be imputed to the child, thus preventing the child's recovery, as distinguished from the parents'?

"Mr. Bender: No.

"The Court: What—

"Mr. Bender: I believe that the negligence of which a parent may be guilty would bar her from recovery for medical specials incurred on behalf of the child.

"The Court: I agree with you fully, but that won't answer my question."

[2]"The Court: We have a motion pending here, and I worked through the entire noon hour on this.

"The motion to strike, I think it is your first cause, or first affirmative cause of Action [sic], in other words, your affirmative cause of Action [sic] is contributory negligence of the child, that is denied.

"Mr. McCament: Do I understand that the Court is going to allow evidence of contributory negligence?

"The Court: We are going to proceed right straight on the cases, and charge the Jury on the care of the child. This latest case of the Supreme Court, Counsel, 51 Cal. 2nd, 448 [334 P.2d 870] (i.e., Courtell v. McEachen), is in point. The language is very, very strong, in my opinion. I feel that we must have some evidence. We will then proceed with the proper instructions concerning the extent of due care of a child. Among other grounds upon which I am denying the motion is that it is not a proper time to be made. We will simply proceed with the case. . . .

"Mr. McCament: Your Honor, this contributory negligence factor—speaking of that, we have a four-year old child here, and I would like your Honor to read the cases which I brought in.

"The Court: What do I do with the California 1954 Supreme Court case?

"Mr. McCament: There is no holding directly on a four-year old child.

"The Court: That is correct; but that language is sufficiently broad to frown upon a Judge making a decision now. This is very strong language that the Court uses. There is language in the case I cited, 116 Cal. 2nd, [sic] 310 (i.e., Ellis v. D'Angelo, 116 Cal. App. 2d 310 [253 P.2d 675]), to the effect that the Court feels there that from four a child's natural development is such—and then it gets up into five and

statements were not evidence, the judge cautioned the jury: ". . . follow closely their opening statements, because it assists you in understanding the case as it proceeds."

The defendants, in their opening statement, spoke of the contributory negligence of the minor plaintiff as follows: ". . . [W]e anticipate that the evidence will show that the Plaintiff herself was contributorily negligent, and she failed to exercise ordinary care—the ordinary care required of a child of that age under the same circumstances."

After the opening statements were completed, the court adjourned until the following morning. The reporter's transcript discloses that on the following morning, in chambers out of the presence of the jury, plaintiff renewed her motion. It was again denied.[3]

The case again proceeded to trial before the jury. In the

six—that a four-year old child does not at all necessarily apply—the rule does not necessarily apply to a four-year old child.

"MR. McCAMENT: Your Honor—

"THE COURT: The language in this, 116 Cal. 2nd, [sic] this other case—in any event, *the motion is denied and I will receive evidence.*

"MR. McCAMENT: I would like to point out that there is a distinction between the case of the five-year old and nine months and a four-year old child—that is different than one who is a pre-school child.

"THE COURT: The question—

"MR. McCAMENT: There is no question about it.

"THE COURT: I agree,

(Off the record discussion.)

"MR. McCAMENT: Your Honor, there is a Pennsylvania case—

"THE COURT: Oh, no." (Emphasis added.)

[3]"MR. McCAMENT: For the record, I wish to renew my motion again to strike from Defendant's [sic] answer, prior to the trial, the second affirmative defense of contributory negligence, . . . and amend the pretrial order and delete . . . I make this motion in light of the recent case of *Morales* versus *Thompson.*

"THE COURT: Let's not argue.

"MR. McCAMENT: The District Court of Appeals' case, decided June 17, 1959, re hearing denied July 17, 1959, hearing denied August 12, 1959. The official citation is 171, ACA 433, and I further wish to state for the record that it is submitted in instructions that I, as Plaintiff's Counsel, intend to submit. I will not submit instructions on contributory negligence insofar as the child is concerned, because this is a settled matter of law in the State of California.

(Off the record discussion.)

"THE COURT: *As to your motion, it is denied without prejudice. In denying the motion to strike, the Court feels that before it can properly consider this, there must be evidence in the case, and the other reason for denying the motion is that it is not timely done.*

"Proceed now. . . .

"THE COURT: . . . [T]he motion is denied at this time. . . .

"MR. McCAMENT: It's going up, I'll tell you that right now. . . .

"THE COURT: He has made one motion this morning, and that is in regard to contributory negligence. I am denying the motion at this time,

course of events, defendants' counsel brought out the following testimony by Mr. Hall, the defendant driver:

"Q. . . . What other remark do you recall stated? A. Between Mr. Morningred and myself, or Mrs.?

"Q. Mr. Morningred. A. Well, this was the second visitation. Mrs. Morningred said that she didn't fully blame me, that Cherrie [sic], her daughter, was hard to control and she had had trouble keeping her in her own yard."

Finally, on the morning of the third day of trial, the judge indicated that if plaintiff desired to renew the motion to strike the affirmative defense of contributory negligence and to amend the pretrial order in connection therewith, the court would grant the motion.[4] The motion was granted.

The judge, at plaintiff's request, did instruct the jury at the conclusion of final argument as follows:

"The law conclusively presumes that a child of the age of the plaintiff on June 11, 1958, is inculpable [sic] of contribu-

---

subject to it being renewed, and subject to a motion to strike, and subject to proper instructions. I am denying it at this time.

"The language used by the Supreme Court in *Cortel* versus *Makeekan*, 41, Cal. 2nd, 448 and page 454 and 455. [*Sic*] (i.e. *Courtell* v. *McEachen*, 51 Cal. 2d 448 [334 P.2d 870].)"

4"'THE COURT: . . . *Now, Mr. McCament, what is your evidence going to show as the birth date of this child?*

"MR. McCAMENT: Let me check that here.

"MR. BENDER: Isn't that May 10, 1954?

"MR. McCAMENT: It's going to show she was 4 years and 1 month on the date of this accident. 1954. May 10, 1954.

"THE COURT: May 10, 1954.

"Mr. Bender, are you going to have any evidence to the contrary or do you dispute that that is her birthday, May 10, 1954?

"MR. BENDER: The answer is negative to both questions. We don't dispute that is her birth date.

"THE COURT: *A motion was made previously and before testimony came into the record to strike from the answer the second separate affirmative defense. At that time there was no evidence. The pre-trial order permitted this defense to stand and the Court felt that until there was some evidence as to the age of the child and the circumstances of the accident, that it would be improper to grant the motion at that time.*

"In view of the present record, if Mr. McCament desires to renew his motion, it will be granted, and it is the Court's intention to instruct the jury that a child of that age at the time of the accident can not be held as a matter of law to have been negligent. I will not give the charge concerning the due care of a child which is customary for older children.

"MR. McCAMENT: At this time, your Honor, I would like to renew my motion to strike from the Answer the second affirmative defense of contributory negligence and to amend the pre-trial order to delete therefrom.

"MR. BENDER: We oppose the motion on the grounds previously stated. It is an issue and counsel acquiesced in the pre-trial order and at that time stipulated it was an issue.

"Secondly, that is based on the McEachen case. This case should be

tory negligence. Such a conclusive presumption the law will not permit to be contradicted. . . .''

 The trial court erred in refusing to strike the defense of contributory negligence. The law is settled that the tender years of plaintiff rendered her incapable of being contributorily negligent. As stated in the very recent case of *Christian* v. *Goodwin,* 188 Cal.App.2d 650, 654-655 [10 Cal.Rptr. 507] :

"In other jurisdictions, it is apparent that the rule holding a child incapable of contributory negligence as a matter of law has been applied to children between 4 and 5 years [citations]. And in an extensive annotation reviewing earlier cases outside of California relating to the contributory negligence of children, in 107 American Law Reports, page 102, et seq., is the following observation: 'In a majority of the cases it seems that the courts have regarded a child between the ages of four and five as incapable of personal negligence, the rule of conclusive presumption of incapacity applying to a child of such an age.'

"The weight of authority in other jurisdictions is opposed to the proposition that a child under 5 can be guilty of contributory negligence; and support is given this view by our own Supreme Court in *Gonzales* v. *Davis,* 197 Cal. 256 [240 P. 16], reaffirmed when relied upon in *Crane* v. *Smith,* 23 Cal.2d 288 [144 P.2d 356], and restated and cited in *Conroy* v. *Perez,* 64 Cal.App.2d 217 [148 P.2d 680] ; *Ellis* v. *D'Angelo,* 116 Cal.App.2d 310 [253 P.2d 675] ; and *Morales* v. *Thompson,* 171 Cal.App.2d 405 [340 P.2d 700]. *Thus we conclude that a child of the age of the minor plaintiff does not have sufficient capacity to be guilty of contributory negligence. . . .*'' (Emphasis added.)

The judge indicated (see footnote 4) that he thought it would have been improper to grant plaintiff's motion prior to the receipt of evidence of the ''age'' of the minor plaintiff. As heretofore set forth, it was stipulated by the pretrial order that plaintiff was ''4 years of age at the time of the accident.'' This stipulation constituted a judicial admission. There was no necessity for any other evidence of plaintiff's age.

---

presented to the jury for its determination. And, thirdly, *the evidence is not complete yet as to the extent of the contributory negligence of the child.* . . .

''THE COURT: *I have read all of the cases which counsel have submitted and would have granted this motion when initially made but for the circumstances that I have indicated.* The deposition was taken late. I felt it was necessary, as I say, to get some facts and circumstances.'' (Emphasis added.)

The pretrial order setting forth one of the issues as "contributory negligence" was ambiguous. Contributory negligence of whom? The plaintiff—plaintiff *and* her mother, or only the contributory negligence of plaintiff's mother?

Counsel should have been more diligent. There were opportunities to correctly define the issues, at the law and motion stage of the proceedings or at pretrial. To delay as counsel did in this case is not conducive to the proper administration of justice. The jury, however, was correctly instructed as to the conclusive presumption against plaintiff's contributory negligence.

Appellant's next contention is that "It was prejudicial error for the trial court to deny plaintiff's motion made prior to trial to strike from the answer the third affirmative defense of imputed negligence of the mother of the minor plaintiff child."

In the case at bar the minor plaintiff was seeking both general and special damages. The third affirmative defense pleaded in the answer was the contributory negligence of plaintiff's parent.

It is clear that the negligence (i.e., contributory negligence) of a parent is not imputable to the minor child and will not prevent the latter from recovery of general damages for the injury received. (See *Girard* v. *Irvine,* 97 Cal.App. 377 [275 P. 840]; *Bauman* v. *City & County of San Francisco,* 42 Cal.App.2d 144 [108 P.2d 989]; *Crane* v. *Smith,* 23 Cal.2d 288 [144 P.2d 356]; *Staggs* v. *Atchison, Topeka & S. F. Ry. Co.,* 135 Cal.App.2d 492 [287 P.2d 817]; *Reynolds* v. *Willson,* 51 Cal.2d 94 [331 P.2d 48]; *Gavin* v. *Watt,* 144 Cal.App.2d 238 [300 P.2d 842]; *Harper* v. *Vallejo Housing Authority,* 104 Cal.App.2d 621 [232 P.2d 262]; *Caraveo* v. *Pickwick Stages System,* 113 Cal.App. 443 [298 P. 516]; *Smith* v. *Schwartz,* 14 Cal.App.2d 160 [57 P.2d 1386]; *Carpenter* v. *Gibson,* 80 Cal.App.2d 269 [181 P.2d 953]; *Malloway* v. *Hughes,* 125 Cal.App. 573 [13 P.2d 1062].)

It is equally clear that the parents' contributory negligence is a bar to the minor's recovery of special damages for medical expenses. As stated in *Mattox* v. *Isley,* 111 Cal.App.2d 774, 779-780 [245 P.2d 664]:

". . . A child is entitled to recover special damages for medical expenses paid by his parents for his benefit, but such item is subject to the defense of contributory negligence on the part of the parents. When they sue as guardians *ad litem* and plead such medical expenses as have not been

paid, the allegation thereof is a waiver of the parents' rights, and the child may recover such items of special damage unless precluded by the contributory negligence of the parents. (*Shriver* v. *Silva*, 65 Cal.App.2d 753, 768 [151 P.2d 528]; *Bauman* v. *City & County of San Francisco*, 42 Cal.App.2d 144, 162 [108 P.2d 989].)''

▆▆▆ In that contributory negligence constitutes a bar to the recovery of special damages for medicals, the trial court did not err in refusing to strike defendants' third affirmative defense.

Furthermore, the jury's verdict was based upon the failure of plaintiff to establish any negligence upon the part of the defendants. It was not predicated upon contributory negligence of the parent.

▆▆▆ Appellant next asserts that ''It was an abuse of discretion and prejudicial error to deny plaintiff's motion to allow plaintiff child to testify in her own behalf without making a determination as to her competency.''

On April 1, 1959, defendants filed a ''NOTICE OF INTENTION TO TAKE THE DEPOSITION OF PLAINTIFF JERRI MORNINGRED.''

As heretofore indicated the ''PRE-TRIAL CONFERENCE ORDER'' was filed June 11, 1959. The pretrial statements submitted by both parties were made a part of the pretrial order.

Contained within defendants' ''PRE-TRIAL STATEMENT AND PROPOSED STIPULATIONS'' is the following:

''. . . The deposition of Ruth H. Morningred, mother of plaintiff Jerri Morningred, and the defendant driver have been taken. No other depositions have been requested by counsel for plaintiff. *However, defendants properly noted the deposition of the minor plaintiff for April 10, 1959 at 10:00 a.m. in the offices of Schell, Delamer & Loring and said plaintiff failed to appear for said deposition. Her counsel, Warren H. McCament, Esq., has refused to allow the deposition of said minor plaintiff to be taken. Accordingly, defendants move the court for a protective order to the effect that neither said minor plaintiff sumit [sic] to the taking of her deposition prior to trial of the captioned action or that the court enter an order prohibiting said minor plaintiff from being called as a witness on her own behalf in said action.*'' (Emphasis added.)

The ''PRE-TRIAL CONFERENCE ORDER'' contains the following stipulation: ''*It is further stipulated that there shall be*

*no deposition taken of the plaintiff and the plaintiff shall not be called by her counsel as a witness.*'' (Emphasis added.)

In accordance with the above stipulation, defendants made no further effort to take the minor plaintiff's deposition.

On March 21, 1960, more than one year after the above "PRE-TRIAL CONFERENCE ORDER" and stipulation, and during *plaintiff's opening statement to the jury,* the reporter's transcript discloses the following:

"There were no witnesses to this accident when Cherrie [*sic*] Morningred was struck. *She is not going to be called to testify. She is too young. The Judge, opposing Counsel and I have stipulated—*

"THE COURT: May I correct you? I believe you are in error.

"MR. McCAMENT: Judge, I am speaking of the pre-trial Judge.

"MR. BENDER: Your Honor, I object—

"THE COURT: Just one moment. So far as this case is concerned, there is no stipulation or agreement between Counsel and myself as Judge, and Counsel must get permission to put this child on the stand. There is a question of the child's maturity, and I don't know whether it is qualified to testify so far as this Court is concerned at this time. The parties are not to be considered.

"MR. BENDER: For Counsel's benefit. I just want the record to show that we did not stipulate. *It is Plaintiff's Counsel who says that he stipulates that he will not call the child.*

"MR. McCAMENT: I would refer the Court to the pre-trial statement, and that is not true.

"THE COURT: Proceed with the case. Proceed, Mr. Mc-Cament." (Emphasis added.)

After plaintiff's opening statement, the trial judge read the stipulation to the jury.

On the afternoon of March 22, 1960, out of the presence of the jury, plaintiff's counsel made a motion to permit the minor plaintiff to testify, "subject to the Court's deciding if she is a qualified witness."

The trial judge made it clear that for purposes of ruling on the motion it was being assumed that the child was competent.[5] The motion was denied.

---

[5]"THE COURT: . . . We are assuming for the purpose of this that she (i.e. minor plaintiff) is competent, because if she isn't competent, there is nothing to talk about. The motion assumes that she is competent. *We*

We think the contention of appellant is devoid of merit. In denying the motion the trial court made it clear that the child was treated as being competent. The determination of competency would only have become pertinent if the trial court had ruled that plaintiff would not be bound by the pretrial stipulation.

It is clear that the trial court did not abuse its discretion by refusing to relieve plaintiff from the stipulation. No fraud and no sufficient facts were shown to require such relief. (*Ross* v. *Atchison, Topeka & S. F. Ry. Co.*, 141 Cal.App.2d 178, 182 [296 P.2d 372].) Plaintiff's motion was exceedingly dilatory. It would have been most unfair to the defendants to permit plaintiff to repudiate the stipulation during the trial. As shown in the reporter's transcript, plaintiff's counsel was not even certain that the child would testify if the court granted the motion.[6]

Appellant's last contention is that "The trial court erred in refusing to instruct the jury in accordance with instructions requested by plaintiff as to the duty of defendant driver operating in the vicinity of children."

Appellant asserts that "the instructions on negligence given by the trial court failed to take into consideration the fact that the plaintiff in this case was a minor child and that the defendant knew that there were children in the vicinity of his vehicle." None of the instructions given dealt specifically with the care required for the safety of a child.[7]

Plaintiff requested the court to give three instructions. The first of these instructions was predicated upon *Conroy*

---

are assuming for the basis of this motion that she is competent, and assuming she is, is it proper that you permit her to testify.'' (Emphasis added.)

[6] "MR. McCAMENT: Frankly, your Honor, I do not know whether the child would testify to the entire Panel or not, because she is a child and she has some reticence in speaking about the accident.

"THE COURT: Do you mean to the Jury?

"MR. McCAMENT: To the Jury; yes. As I say, I'm not sure that she will. This will rest in the sound discretion of this Court.''

[7] The following instructions on negligence were given:

"101 (i.e. Basic Definition)

"Negligence is the doing of an act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, actuated by those considerations which ordinarily regulate the conduct of human affairs. It is the failure to use ordinary care in the management of one's property or person.

"Negligence is not an absolute term, but a relative one. By this we mean that in deciding whether there was negligence in a given case, the

v. *Perez*, 64 Cal.App.2d 217 [148 P.2d 680], and provided: "The presence of children is in itself a warning requiring the exercise of care for their safety."

---

conduct in question must be considered in the light of all the surrounding circumstances as shown by the evidence.

(REQUESTED BY PLAINTIFF)
(GIVEN AS REQUESTED) "

"101-B (i.e. Negligence—Further Elaboration of Definition.)
"You will note that the person whose conduct we set up as a standard is not the extraordinarily cautious individual, nor the exceptionally skillful one, but a person of reasonable and ordinary prudence. While exceptional skill is to be admired and encouraged, the law does not demand it as a general standard of conduct.

(REQUESTED BY DEFENDANT)
(GIVEN AS REQUESTED) "

"101-C (i.e. A Test for Determining the Question of Negligence.)
"One test that is helpful in determining whether or not a person was negligent is to ask and answer whether or not if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, he would have foreseen or anticipated that someone might have been injured by or as a result of his action or inaction. If such a result from certain conduct would be foreseeable by a person of ordinary prudence with like knowledge and in like situation, and if the conduct reasonably could be avoided, then not to avoid it would be negligence.

(REQUESTED BY PLAINTIFF)
(GIVEN AS REQUESTED) "

"101-F (i.e. Proof of Every Act or Omission of Alleged Negligence Not Necessary.)
"It is not necessary to support a finding of negligence that every act and omission charged against a person be proved. If by a preponderance of evidence it has been proved that any negligent conduct on the part of the defendants was a proximate cause of an injury in question, such proof is sufficient to support findings against those parties on those particular issues.

(REQUESTED BY PLAINTIFF)
(GIVEN AS REQUESTED) "

"102-A (i.e. Amount of Caution Varies.)
"The amount of caution required of a person in the exercise of ordinary care depends upon the danger which is apparent to him or should be apparent to a reasonably prudent person in the particular situation and circumstances involved.

(REQUESTED BY PLAINTIFF)
(GIVEN AS REQUESTED) "

"140 (i.e. Looking and Not Seeing.)
"General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened but did not hear that which he could have heard in the exercise of ordinary care, it follows that either some part of such evidence is untrue or the person was negligently inattentive.

(REQUESTED BY PLAINTIFF)
(GIVEN AS REQUESTED) "

The second instruction submitted by plaintiff was based upon *Cambou* v. *Marty*, 98 Cal.App. 598 [277 P. 365], and provided: "Any reasonable man can be charged with knowledge that a child is apt to be found in and about the child's home. Charged with that knowledge it becomes his duty to use vigilance and care before setting in motion a dangerous instrumentality in that locality."

The third instruction was B.A.J.I. No. 148 which was requested, but not submitted by plaintiff. This instruction provides as follows:

"148. CARE REQUIRED FOR SAFETY OF CHILD.

"Ordinarily it is necessary to exercise greater caution for the protection and safety of a young child than for an adult person who possesses normal physical and mental facilities. One dealing with children must anticipate the ordinary behavior of children. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they often are thoughtless and impulsive, imposes a duty to exercise a proportional vigilance and caution on those dealing with children, and from whose conduct injury to a child might result."

We believe that the recent case of *Guyton* v. *City of Los Angeles*, 174 Cal.App.2d 354 [344 P.2d 910], supports plaintiff's assertion that the judgment should be reversed. (See *Kading* v. *Willis*, 135 Cal.App.2d 82 [286 P.2d 861].)

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.