[Civ. No. 18972.   Second Dist., Div. Two.   June 19, 1952.]

HOWARD LELAND MATTOX, a Minor, etc., Respondent, v. P. R. ISLEY et al., Appellants.

Moss, Lyon & Dunn, Richard B. Coyle and Henry F. Walker for Appellants.

Irwin W. Rainer for Respondent.

MOORE, P. J.—Howard Mattox, 3 years and 10 months of age, accompanied by his parents attended the theater of appellants on the evening of July 12, 1950. Although the auditorium had been opened at 6:45 p. m., the trio did not arrive until a few minutes after 7 o'clock. After entering they hesitated for a few moments at the head of the aisle for an usher to serve them. None appearing, they went forward and chose seats in the 17th row from the rear. The father occupied the fifth chair from the aisle, the mother sat in the fourth, and Howard next to her. The two seats to his right and the one directly in front of the child remained unoccupied throughout the evening.

About an hour after their arrival Howard fell to the floor, cried and screamed loudly. His mother gathered him into her arms and rested his head upon the father's lap. She promptly discovered blood running down her arm and speedily rushed the child to the lobby where, it was found, a gash had been cut across the bridge of his nose. No physician being at once available, the parents transported the child to a nearby emergency hospital where an antitetanus remedy was administered and the cut was sutured with seven stitches. The child was then removed to his home.

Mr. Mattox returned to the theater where, after the programmed films had been completed, he and Mr. Rock, assistant manager, undertook to locate the spot where Howard had fallen in order to determine the instrumentality that had caused the wound. Having failed of his purpose then he and Mrs. Mattox returned to the theater on July 19 to inspect the chairs again but found *no change in their condition*. However, with the advantage of daylight they reexamined the third seat from the aisle in the 18th row and found its wooden back pushed forward out of line and the metal band which had connected it with the adjoining chair protruding into the aisle, so that a sharp edge extended out about 20 inches from the floor. Further inspection disclosed many other seats throughout the theater suffered the same defect. The same observation had been made by Mr. Rock repeatedly after his inspections of the theater.

The protruding band is, normally, bolted to the back of the adjoining seat and at its center is secured to the "seat standard," which is a metal frame between the seats and is anchored to the concrete floor. The seat standard serves as a frame and support for the seat on either side and as the base for the armrest between the seats.

Respondent predicated his action for damages upon the negligence of appellants in permitting the sharp metal band to continue protruding and contended that he struck his head upon it solely by reason of its having been so negligently maintained. ·From a judgment awarding respondent damages for his injuries suffered when he fell upon the protruding band, the owners of the theater appeal. They demand a reversal on the grounds of (1) insufficient evidence of negligence, (2) insufficient proof of proximate cause, (3) error in striking the affirmative defense of contributory negligence on the part of Mr. and Mrs. Mattox.

### EVIDENCE OF NEGLIGENCE—SUFFICIENT

While it is true that there is no direct evidence that the third seat on the 18th row from the rear was in a dangerous and defective condition on July 12, 1950, the circumstances are so pregnant with proof of negligence as to render inescapable the ultimate fact that on that day it was in such a defective condition as to be perilous to a 4-year-old child sitting on the chair behind it. . It is a reasonable inference that the condition of the protruding band on July 19 was exactly its condition on July 12. The seats were stationary; they had not been removed and returned in the interim; every chair had the same band connecting it with its neighbor and many had suffered the same impairment. Appellants denied Mr. Mattox permission to photograph the metal band as he found it July 19 and thereafter repaired it. The gash on respondent's nose was, according to the attending physician, cut "about one inch and a quarter long and the edges were rather well cut, rather sharp . ·. . was caused by something rather sharp." The wound had a clean cut edge without evidences of bruising and contusions which are present when a cut results from a blunt surface such as the rounded top of the back of the seat in front of Howard.

The nature of the cut and the photographic exhibits and drawings of the theater seats are compelling proofs that the protruding metal band was the only object accessible to the child that could have caused the wound described by the physician. It cannot therefore be said that there was no substantial evidence from which the jury could infer that appellants had negligently maintained a constant peril for the patrons of their theater and especially so for those of very tender ages. · '

But appellants. contend that even though ·the sharp metal

band so protruded on July 12, 1950, as to constitute a peril for patrons, there is no showing that they had either actual or constructive knowledge thereof for such a period of time as would have afforded them opportunity to remove the danger. ■ However, the presumption of constructive notice to theater owners does not arise from a lapse of time only. ■ Evidence that they have not taken reasonable precautions for the safety of all invitees; that they did not exercise diligence in seeking to know the conditions of every part of their premises and of every object in their theater with which a patron might reasonably be expected to come in contact, and the probability that invitees will not discover invisible or concealed though dangerous hazards in the dim light or darkness of an auditorium—these are all factors, the presence of any of which will indicate negligence on the part of a theater's management. (*Travis* v. *Metropolitan Theatres Corp.*, 91 Cal.App.2d 664, 667 [205 P.2d 475].) ■ Whether the dangerous condition has existed long enough to have been discovered by a reasonably prudent man is for the trial court to determine. (*Ibid.*) The time limitations must be determined from the circumstances of each accident, and whether the sum total of the factors that should alert the proprietor of a theater to a realization of their presence and of their potential harm is likewise for the trier of fact.

■ That the evidence submitted on the trial of this action is sufficient to justify a finding that appellants so negligently maintained their theater as to constitute it a hazard to its patrons cannot be denied. Many seats throughout the auditorium were found by Mr. Mattox on July 19 to be pushed forward and out of line as was that in front of Howard on July 12. The same condition was found by Mr. Rock as reported in his testimony, although he had never brought the matter to the attention of the manager. On the night of the accident the auditorium was dimly lighted when respondent and his parents arrived. No usher was there to conduct them to a location that was secure from harm and away from protruding sharp-edged metal bands but they had to grope their way to seats without the aid of a flashlight. The seats were antiquated: appellants' building was the only theater in California using the type of seat they had. A person of reasonable intelligence and caution should have anticipated danger to patrons from the protruding 1-inch clamp. Appellants contend that they could not have noticed

the metal band if it did not protrude before the 15 minutes preceding respondent's occupancy of the chair behind it. However, the bracket was so securely bolted to the adjacent seat that it could not be readily removed. It could have become separated only as a result of continued pressure thereon.

Inasmuch as the court below adopted the testimony of Mr. Mattox that seat No. 3 in the 18th row was defective on July 19, it is binding on appeal. From such evidence coupled with the affirmative proof above recited the inference is reasonable that the peril existed on the 12th day of July, 1950. It was foreseeable that a person occupying a seat behind and near such a sharp-edged instrument as the metal band might strike against it and injure his body or his clothing; especially an invitee of such restless enthusiasm as that of a child in the presence of pleasant music and a brilliant spectacle. A child of 4 is not expected to exercise such amount of caution as is essential to its safety under the circumstances disclosed.

The evidence of negligence is adequate to support the findings and judgment. ▮ Under appellate practice it is elemental that when a finding of the trial court is attacked as being without support the appellate tribunal is bound by the determination of the trial court if there is any substantial evidence to support that court's decision. When two or more inferences are reasonably deducible from the facts those drawn by the court on appeal may not be substituted for those of the trial court. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) ▮ By the same token the implied finding that the proximate cause of respondent's injury was the sharp-edged, protruding bracket finds ample support in the testimony of the physician and of Mr. Mattox and in the exhibits.

Appellants assign as error the order of the court striking their affirmative defense. By such plea they alleged contributory negligence of plaintiff's parents in their failure to exercise due care in the control of their child and that such neglect caused his injury. Respondent made the motion to strike such affirmative defense at the commencement of the trial. The order granting the motion was error. ▮▮ A child is entitled to recover special damages for medical expenses paid by his parents for his benefit, but such item is subject to the defense of contributory negligence on the part of the parents. When they sue as guardians

*ad litem* and plead such medical expenses as have not been paid, the allegation thereof is a waiver of the parents' rights, and the child may recover such items of special damage unless precluded by the contributory negligence of the parents. (*Shriver* v. *Silva*, 65 Cal.App.2d 753, 768 [151 P.2d 528]; *Bauman* v. *City and County of San Francisco*, 42 Cal.App.2d 144, 162 [108 P.2d 989].)

Appellants' attack upon the order striking the plea of contributory negligence is not answered by respondent, but he now asserts that appellants have waived their right to object to such order by virtue of their having failed to asssign it as error on their motion for a new trial. Respondent's argument is erroneous. ▉ The trial court's order striking the plea of contributory negligence was "deemed to have been excepted to." (Code Civ, Proc., § 647.) ▉ Its correctness may therefore be challenged on appeal. ▉ The ruling of a court in granting or denying a motion to strike a pleading is an action which raises only a question of law and if erroneous can be corrected only by the erring court or by the court of appeal. (*Pratt* v. *Pratt*, 141 Cal. 247, 251 [74 P. 742].) ▉ Although it is common practice for a dissatisfied litigant to urge errors of law as grounds for a new trial it is not compulsory that he do so but he may, instead, present them on appeal as grounds for reversal of the judgment. (2 Cal.Jur., § 103, p. 306; *Massachusetts Bonding & Ins. Co.* v. *Los Angeles Ry. Co.*, 182 Cal. 781, 785 [190 P. 161].)

*Cummings* v. *Cummings*, 97 Cal.App. 144 [275 P. 245], does not support respondent's contention. There, the defendant, by declining to oppose plaintiff's motion acquiesced in the court's ruling.

▉ Therefore, since appellants were denied the privilege of pleading their special defense, the award must be reduced in the sum of $1,861.85, the amount of medical expense established.

It is therefore ordered and adjudged that the judgment be modified by reducing the amount thereof by $1,861.85.

As so modified the judgment is affirmed.

McComb, J., and Fox, J., concurred.