[Civ. No. 22324.   Second Dist., Div. Two.   July 24, 1957.]

PEARL OLDENBURG, Respondent, v. SEARS, ROEBUCK AND COMPANY (a Corporation), Appellant.

736

Moss, Lyon & Dunn, Sidney A. Moss, John L. Wheeler and Henry F. Walker for Appellant.

John P. McGinley and David M. Harney for Respondent.

FOX, J.—While walking on the sidewalk adjacent to one of defendant's stores, plaintiff stepped on a piece of chalk. It rolled and caused her to fall. She sued defendant for damages for the injuries thus sustained. The jury returned a verdict in her favor. Defendant appeals from the judgment and the order denying its motion for a judgment notwithstanding the verdict.

In seeking a reversal defendant (sometimes herein referred to as Sears) contends that the evidence fails to show that it was either responsible for the chalk being on the sidewalk, or that it had either actual or constructive notice of its presence there.

Sears operates a store at 12121 Victory Boulevard, in North Hollywood, California, which is known as the Valley Store. It is located on the north side of Victory, on which it has a frontage of approximately 150 feet; it has a depth of some 500 feet to Hamlin. There is a sidewalk and parking area on both the east and west sides of the store. The sidewalks are between 10 and 13 feet wide and are adjacent to the building. There are three doors opening onto the sidewalk on the east; one of these is toward the north end of the building, one toward the south, and the other about the middle. There are also three openings on the west. Only the employees' entrance, which is located near the middle, has any significance

here. The stationery and drug departments are located on the first floor and generally in the southwest quadrant thereof. In the northeast corner nursery products are sold. There is a toy department on the second floor. The parking areas were not for the sole use of defendant's customers; there were other stores in the vicinity whose customers also used these parking facilities.

Plaintiff's fall occurred on the sidewalk adjacent to the east side of the store, between the southernmost and middle doorways. It was stipulated that plaintiff was a business invitee at the time and place of the accident, and that defendant "was exclusively in the control, operation and maintenance of the sidewalk in question."

The piece of chalk on which plaintiff stepped was pink, round in shape, approximately $1\frac{1}{2}$ inches long and $\frac{5}{16}$ths of an inch in diameter. There is no claim that anything else caused her to fall.

Plaintiff was 68 years of age at the time of the accident. She and her husband went to Sears' Valley Store for the purpose of purchasing a potted plant. They parked in the parking area on the east side near the center of the building. There were "very few cars" on the lot and not many people around. They entered the store on the east side by the south door. It was about 9:30 in the morning; the store was "just opening up." Upon inquiring about garden plants, plaintiff was directed to the northeast corner of the store. There she was informed that the potted plant she desired was not in stock. She and her husband then left the store through the northerly door on the east side of the building; they proceeded in a southerly direction on the sidewalk toward their car. A short distance after passing the center door, plaintiff stepped on the piece of chalk and fell. She never saw what caused her to fall. Her husband, however, retrieved the offending object.

Plaintiff's first witness at the trial was Mrs. Worthen, who was then employed by Sears as a registered nurse at the Valley Store. She was summoned to the scene of the accident around 10 o'clock that morning. She called an ambulance service which, however, did not respond promptly, thus necessitating a check on it. Also, she called Dr. Goodman, a Sears approved doctor, and explained the situation to him. He advised the nurse that he would get in touch with Dr. Gamble "because it sounds like she has a broken hip." The nurse attended plaintiff until the ambulance took her to the hospital, where Dr. Gamble took charge.

In the meantime, the nurse filled out the customer accident report, in which she indicated by a checkmark that the location where the accident happened was swept daily. However, she had no personal knowledge as to how often the premises were swept. She received her information as to this matter from the personnel office.

While the nurse was at the scene, she observed two chalk marks. They were on separate but adjacent squares of the sidewalk. One was approximately 2¾ inches long while the other was a little more than half that length. The larger mark was near where plaintiff's "knees would be."

In further describing the sidewalk at the scene of the accident there was testimony indicating the presence of two or three globs of hardened gum, "a black mark," approximately a half dozen "little pieces of something" that the nurse picked up and put in her pocket, and two or three places which the nurse rubbed with her foot "as though she was trying to rub something out." It is not claimed, however, that any of these items had anything to do with plaintiff's falling.

Charles W. Teed was defendant's operating superintendent, which included maintenance. As part of his duties, Teed inspected the sidewalks bordering the store three or four times daily. There was "a definite schedule for constantly maintaining cleanliness." It called, inter alia, for cleaning the sidewalks between 6:30 and 9 o'clock each morning. The system provided for "constant patrol" with respect to the maintenance of the sidewalks and "sweeping whenever necessary."

Mr. Teed usually arrived at the store between 8:45 and 9 o'clock. After he parked, the first thing he did was to inspect the sidewalks. While he had no independent recollection of the morning of this accident, in this respect, he made such an inspection every day that he came to work and he was there that particular day, having been called to the scene of the accident before plaintiff was taken to the hospital.

Directly under Mr. Teed on the maintenance side of the store's operation was the building engineer, Mr. Schugt. Mr. Teed told him that "he was to maintain a very high standard of cleanliness"; that the premises were "to be maintained in a safe and clean manner at all times." The porters and maids who did the cleaning were under the supervision of Schugt. The head porter was Mr. Clay. On his day off, Mr. Ham acted in his place.

The porters' time cards disclose that on February 16, 1954, the date of plaintiff's accident, six porters reported for work on the 4 a. m. shift (other porters came to work at 9:30). It was Clay's day off, so Ham acted as head porter. Only the latter's testimony and that of Mr. Polley, whose duty it was to clean the sidewalks commencing at 6:30 a. m., are important.

The Valley Store had an alarm system, referred to as ADT, which operated and controlled until 7:40 a. m. If, before that time, any door was opened other than at a scheduled time an alarm would go off. Only the employees' entrance was scheduled for opening at an earlier hour. After the 4 a. m. opening of the employees' entrance, its next scheduled opening was 6:30; thereafter the scheduled openings were 7, 7:20 and 7:40 a. m.

Neither Ham nor Polley had any independent recollection of the day in question. However, every day that Polley worked he would, upon being let into the building with the other porters on the 4 a. m. opening, begin working on the inside. Part of his job was to clean the sidewalks. He was on a regular schedule for starting this part of his work and reported at the employees' entrance each day so as to be let out on the 6:30 ADT opening. He took with him a broom, a dustpan, pushcart and scraper. He always started his sidewalk cleaning at the employees' entrance. From there he worked south each morning to Victory and continued all the way around the building. It took about two and one half hours to clean the sidewalks. When he finished this work he reported to the head porter (on this day Mr. Ham), who gave him his next assignment. Polley knew that the head porter and Schugt would inspect his work to see whether he had properly cleaned the sidewalks. Polley checked the sidewalks four or five times daily to see whether they were clean.

It was Ham's practice, in the absence of Clay, to unlock the various doors to the store between 9 and 9:30 each morning and at that time step out and look up and down the sidewalk, and then put the door on a hook so that no one could come in before opening time. When the store opened at 9:30 Ham would walk around the store inspecting the sidewalks.

Mr. Schugt was at work on the day of the accident. He inspected the sidewalks every day when he came to work between 8 and 8:30 a. m. and inspected them at frequent intervals throughout the day.

After the accident, Mr. Rowland, defendant's security

supervisor, investigated to see whether chalk was sold in the store. He found that neither the stationery nor the toy departments had chalk on hand. He did not inquire at other departments.

While other employees of defendant, such as Miss Fife, personnel manager, and Mr. Carmichael, manager of the drug and cosmetic department, were at the scene of the accident after plaintiff fell, not one of them was able to throw any significant additional light on the circumstances surrounding her fall. Although plaintiff's husband was with her and attended the trial he did not testify.

■ The occupier of business property owes to invitees a duty to exercise reasonable care in keeping the premises reasonably safe for such invitees. (*Louie* v. *Hagstrom's Food Stores*, 81 Cal.App.2d 601, 608 [184 P.2d 708] ; *Ahern* v. *S. H. Kress & Co.*, 97 Cal.App.2d 691, 693 [218 P.2d 108] ; *Frank* v. *J. C. Penney Co., Inc.*, 133 Cal.App.2d 123, 125 [283 P.2d 291].) ■ As in other actions based on negligence a plaintiff, in order to recover damages, must also establish that the defendant breached that duty and that such breach was a proximate cause of injury to plaintiff. (*Palmer* v. *Crafts*, 16 Cal.App.2d 370, 375 [60 P.2d 533].) ■ The burden is on the plaintiff to prove every essential fact on which she relies (*McKellar* v. *Pendergast*, 68 Cal.App.2d 485, 489 [156 P.2d 950]). This burden is not met merely by proof that plaintiff invitee stepped on something while on invitor's premises and thereby was caused to fall and receive injuries, for "[n]o inference of negligence arises based simply upon proof of a fall upon the owner's floor. The doctrine of res ipsa loquitur is not applicable to such cases." (*Vaughn* v. *Montgomery Ward & Co.*, 95 Cal.App.2d 553, 556 [213 P.2d 417] ; *Thomas* v. *Moore*, 146 Cal.App.2d 59, 63 [303 P.2d 624].) ■ Also, as pointed out in *Reese* v. *Smith*, 9 Cal.2d 324, at page 328 [70 P.2d 933] : "If the existence of an essential fact upon which a party relies is left in doubt or uncertainty, the party upon whom the burden rests to establish that fact should suffer, and not his adversary. [Citation.] ■ A judgment cannot be based on guesses or conjectures. [Citation]." ■ Nor may a verdict be upheld "only by resort to speculation." (*Gray* v. *Carter*, 100 Cal.App.2d 642, 645 [224 P.2d 28].) ■ Substantial evidence is required to establish each essential affirmative allegation—a scintilla of evidence is not sufficient for that purpose. (*Estate of Teed*, 112 Cal.App.2d 638, 644 [247 P.2d 54].) ■ Of course an infer-

ence is sufficient to establish a fact in issue but such an inference must be founded on "a fact legally proved." (Code Civ. Proc., §§ 1958, 1960.) ▮ In analyzing the testimony to determine whether there is sufficient evidence to support a particular finding, an "appellate court must accept as established all facts and all inferences favorable to respondent which find substantial support in the evidence." (*New* v. *New,* 148 Cal.App.2d 372, 383 [306 P.2d 987].)

▮ It is, of course, the province of the jury to determine the credibility of the witnesses. Naturally, in the exercise of their discretion, they may reject testimony as unworthy of credence, but "disbelief does not create affirmative evidence to the contrary of that which is discarded." (*Lubin* v. *Lubin,* 144 Cal.App.2d 781, 795 [302 P.2d 49]; *Estate of Bould,* 135 Cal.App.2d 260, 264 [287 P.2d 8, 289 P.2d 15].) ▮ "The fact that a jury may disbelieve the testimony of a witness who testifies to the negative of an issue does not of itself furnish any evidence in support of the affirmative of that issue, and does not warrant a finding in the affirmative thereof unless there is other evidence in the case to support such affirmative." (*Marovich* v. *Central Calif. Traction Co.,* 191 Cal. 295, 304 [216 P. 595]; *Miller* v. *Stults,* 143 Cal.App.2d 592, 603 [300 P.2d 312]; *Moore* v. *Chesapeake & O. Ry. Co.,* 340 U.S. 573, 576 [71 S.Ct. 428, 95 L.Ed. 547].)

▮ Pertinent to a determination of this case are the principles enunciated by the Supreme Court in *Hatfield* v. *Levy Bros.,* 18 Cal.2d 798, at page 806 [117 P.2d 841]. It is there stated: "Where the dangerous or defective condition of the property which causes the injury has been created by reason of the negligence of the owner of the property or his employee acting within the scope of the employment, the owner of the property cannot be permitted to assert that he had no notice or knowledge of the defective or dangerous condition in an action by an invitee for injuries suffered by reason of the dangerous condition. Under such circumstances knowledge thereof is imputed to him. [Citation.] ▮ Where the dangerous condition is brought about by natural wear and tear, or third persons, or acts of God or by other causes which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his

premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it.''

Plaintiff does not contend there is any direct evidence that defendant was responsible for the piece of chalk in question being on the sidewalk. Our search of the record fails to disclose any legally proved fact (Code Civ. Proc., § 1960) from which an inference reasonably may be drawn that defendant was responsible for its presence there. There is no testimony that defendant had chalk in stock at that time. In fact, the testimony on the question is that given by Mr. Rowland to the effect that he inquired at the toy and stationery departments on the day of the accident and was informed that neither of those departments had chalk in stock, and that he did not make such inquiry at other departments. If we assume the jury did not believe this testimony, plaintiff's case is not assisted for such disbelief does not ''warrant an inference that the truth is the direct converse of the rejected testimony.'' (*Estate of Bould, supra,* p. 265; *Lubin* v. *Lubin, supra.*) The failure of the jury to accept Mr. Rowland's testimony as true would not justify an inference that defendant did have chalk in stock and that defendant was responsible for the chalk's presence on the sidewalk on the fateful morning.

Only upon the basis of conjecture, speculation or guess may it be said that defendant was responsible for the piece of chalk in question being on the sidewalk. The law is clear that a verdict and judgment cannot rest on such a basis.

Plaintiff seeks also to sustain the verdict and judgment on the theory that even if the piece of chalk that caused her to fall was deposited on the sidewalk by some third person, defendant had constructive knowledge of its presence there and failed to exercise reasonable care to remove it and that such negligence was a proximate cause of her injury. To impose liability in such circumstances the occupier of business premises ''. . . must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it.''

(*Hatfield* v. *Levy Brothers, supra*; *Louie* v. *Hagstrom's Food Stores*, 81 Cal.App.2d 601, 606 [184 P.2d 708]; *Girvetz* v. *Boys' Market, Inc.*, 91 Cal.App.2d 827, 829 [206 P.2d 6].) In the last cited case, the court pointed out that "The fact alone that a dangerous condition existed at the time the accident occurred will not warrant an inference that the defendant was negligent. There must be some evidence, direct or circumstantial, to support the conclusion that the condition had existed long enough for the proprietor, in the exercise of reasonable care, to have discovered and remedied it." To the same effect are *Owen* v. *Beauchamp*, 66 Cal.App. 2d 750, 752 [152 P.2d 756]; *McKellar* v. *Pendergast*, 68 Cal. App.2d 485, 491 [156 P.2d 950]; *Louie* v. *Hagstrom's Food Stores, supra,* page 607.

There is no evidence that defendant had any actual knowledge of the presence of the piece of chalk on its sidewalk. There is no direct evidence that it was there for any particular period of time—no one testified to having seen it prior to plaintiff's fall.

In her attempt at "reconstructing the evidence" plaintiff says it appears that one of the two previously mentioned chalk marks on the sidewalk was there prior to plaintiff's fall; that "the pre-existing chalk mark in all probability was caused when appellant's sweeper swept the sidewalk some several hours earlier;" and that the chalk on which plaintiff fell must either have had its origin with defendant (an argument already considered), "or the chalk had been on the sidewalk for such an appreciable period of time . . . that it had created a mark on the sidewalk before respondent fell as a result of its presence." In thus "reconstructing the evidence" plaintiff has indulged in a bit of what might be called "poetic license." There is nothing in the evidence to indicate that one of the chalk marks was on the sidewalk prior to the time plaintiff and her husband came along. It is not unlikely that plaintiff was responsible for both of these chalk marks. The smaller of the two marks was to the north of the larger one. Thus, in her walk south she first came to the point where the small mark was found. The larger mark was only a step or two further south in the direction she was walking. In taking a step, plaintiff may have kicked the chalk with such force that it rolled forward a few feet (thus remaining in her pathway) but the downward pressure of her foot may have been great enough to make a small mark where the initial impact occurred. Upon stepping

on it more firmly a bigger mark was made and she was caused to fall. This hypothesis may be challenged as speculative but it is no more speculative than plaintiff's assertion that the mark was there before plaintiff arrived. In support of her theory that one of the chalk marks was on the sidewalk before plaintiff fell, she surmises that "the pre-existing chalk mark in all probability was caused when appellant's sweeper swept the sidewalk some several hours earlier." This statement on its face discloses it is a mere guess. Furthermore, it is unlikely that such a mark would be made in sweeping the sidewalk with a broom, which is the tool Polley testified he used for that purpose.

The hypothesis that "the chalk had been on the sidewalk for such an appreciable period of time that it had created a mark thereon before plaintiff fell" is not only speculative, as previously pointed out, but without legal significance. True, it might have been dropped there and stepped on in such fashion as to produce a mark on the sidewalk five minutes before plaintiff came along. But that would not support the conclusion that the dangerous condition had existed long enough for the defendant, in the exercise of reasonable care, to have discovered and removed it. Constructive knowledge of the presence of the chalk would thus be lacking. (*Girvetz* v. *Boys' Market, Inc., supra; Owen* v. *Beauchamp, supra; Louie* v. *Hagstrom's Food Stores, supra.*) Plaintiff thus fails to establish any reasonable inference in support of her theory of constructive knowledge on the hypothesis that one of the chalk marks was on the sidewalk before she fell.

Plaintiff attaches significance to the condition of the sidewalk in the area where she fell. She draws the inference that it had not been properly maintained because there were two or three globs of hardened gum and "a black mark" on it, and the nurse picked up approximately a half dozen "little pieces of something" and rubbed two or three places with her foot "as though she was trying to rub something out." It is not claimed that these items had anything to do with plaintiff's falling. Nor is it suggested that they created a dangerous condition. Defendant therefore violated no duty to plaintiff in thus maintaining the sidewalk in this area. Furthermore, the presence of these items furnishes no basis for an inference that the piece of chalk had been there for such a period of time that defendant, in the exercise of reasonable care, should have discovered it and removed it. Hence,

defendant was not charged with constructive knowledge of the presence of the chalk on the sidewalk. (*Owen* v. *Beauchamp, supra*; *McKellar* v. *Pendergast, supra*; *Frank* v. *J. C. Penney Co. Inc., supra*.)

The cases cited by plaintiff do not sustain her position. In each of them there was evidence affirmatively proving either that the condition was created by defendant or that the condition had existed for such length of time as to charge defendant with constructive knowledge thereof.*

*The following is a brief analysis of plaintiff's cases:

In *Travis* v. *Metropolitan Theatres Corp.*, 91 Cal.App.2d 664 [205 P.2d 475], there was evidence that the vomit upon which the plaintiff slipped had actually remained on the floor "long enough to form a crust on its surface." It could thus be inferred that the substance had been there for a substantial period of time.

In *Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal.2d 598 [86 P.2d 829], defendant was a common carrier. The evidence indicated that during the thirty minute period while plaintiff was in the waiting room, no one entered or left. The puddle of oil upon which plaintiff slipped was located in the room by the exit door. It was thus a question for the jury whether this proved that the oil was there "for such a length of time that the defendant was charged with notice of the fact of its said existence and location."

In *Lehman* v. *Richfield Oil Corp.*, 121 Cal.App.2d 261 [263 P.2d 13], plaintiff slipped on a telephone booth step. There was evidence "that the oily or greasy spot had been on the step for many hours before the accident."

In *Louie* v. *Hagstrom's Food Stores*, 81 Cal.App.2d 601 [184 P.2d 708], there was much direct and circumstantial evidence indicating that the syrup which caused plaintiff to fall had been on the floor for a substantial length of time; the cashier could see the area from her position; no employee examined the area for at least twenty minutes before the accident; the puddle of syrup was quite large; the syrup was thick and the day was cold, indicating that a substantial period of time would have to elapse before the puddle would reach such proportions. The evidence showed that "this condition existed long enough so that defendant should, in the exercise of ordinary care, have discovered and remedied it."

In *Tuttle* v. *Crawford*, 8 Cal.2d 126 [63 P.2d 1128], the defendants carried wet lettuce across the cement floor of their market. After plaintiff fell she had vegetable particles adhering to her stockings and dress, and there were stains on her garments showing contact with unclean water. The evidence indicated that the dangerous condition was created by the defendants themselves, and that they either did not clear the place of that condition or improperly attempted to do so.

In *Van Wye* v. *Robbins*, 48 Cal.App.2d 660 [120 P.2d 507], plaintiff fell upon a heavy black grease puddle, one-eighth of an inch thick and five inches in diameter. There was evidence to support the finding that the grease had remained upon the surface of the parking lot "for more than twenty minutes."

In *Sears, Roebuck & Co.* v. *Meyer*, 205 F.2d 321, the evidence indicated that oil upon which plaintiff slipped had remained on the cement for an hour and forty-five minutes before the accident. Plaintiff testified that the oily substance was "dusty" and "had dirt on it" when she slipped upon it, thus indicating that it had been there for some time. Furthermore, defendant "knowingly permitted its customers to use

■ Plaintiff's next contention is that the judgment may be sustained on the basis of admissions against interest in the customer accident report which was filled out by defend-

a driveway which occupied a part of the sidewalk, thereby creating a condition which was likely to cause harm to persons using that part of the sidewalk.''

In *Ahern* v. *S. H. Kress & Co.*, 97 Cal.App.2d 691 [218 P.2d 108], the puddle of liquid in which plaintiff slipped and fell was located directly under a counter which contained paints, oils, turpentine, paint remover and related substances. Therefore, it was reasonable to infer that the puddle was the result of some leakage from the counter. Moreover, ''the size, location, shape and nature of the puddle, together with the other facts and circumstances'' were sufficient to sustain a finding that the condition had existed for a substantial length of time.

In *Goldsmith* v. *Mills*, 130 Cal.App.2d 493 [279 P.2d 51], the area where plaintiff fell was littered with paper. The evidence indicated not only that the condition had existed for a substantial length of time, but also that defendants' employees had created the condition.

In *Hale* v. *Safeway Stores, Inc.*, 129 Cal.App.2d 124 [276 P.2d 118], plaintiff slipped on a banana in the aisle of defendant's store near the fruit counter. The banana had some ''small teeth marks'' on it, apparently made by a child who bit into the banana and then dropped it on the floor. Plaintiff testified that in the thirty or more minutes during which she was in the store prior to the accident, she saw no one around the fruit counter, although an employee testified that he swept the area a few minutes before the injury occurred. Plaintiff also testified that no small children were in the store during the period she was there. The court reversed a judgment of nonsuit on the ground that there was some evidence from which a jury might have found that the banana had lain on the floor for a length of time sufficient enough to charge defendant with knowledge. The court went on to state: ''Concededly a person operating a fruit and vegetable section in a store should at least, as to that portion of the premises, in the exercise of ordinary care, maintain a more vigilant outlook than would be required in the operation of some other type of business where the danger of things falling on the floor upon which a person might easily slip and fall is not so obvious.'' (P. 132.)

In *Wills* v. *J. J. Newberry Co.*, 43 Cal.App.2d 595 [111 P.2d 346], there was substantial evidence that defendant's employees had actual knowledge of the existence of the vomit upon which plaintiff slipped and fell. There were several salesgirls in the immediate vicinity when a small boy had vomited. Moreover, another patron slipped and fell at that spot a few minutes before the plaintiff's injury occurred.

In *Harris* v. *Joffe*, 28 Cal.2d 418 [170 P.2d 454], a landlord-tenant case, there had been several complaints by various tenants of the apartment house concerning the slippery condition of the vestibule floor (which had no floor covering) and the unlighted condition which prevailed most of the time. Thus, defendant had actual knowledge of the dangerous condition.

In *Hatfield* v. *Levy Bros.*, 18 Cal.2d 798 [117 P.2d 841], the evidence showed that the floor where plaintiff fell was extremely slippery. A skid mark was left by plaintiff's shoe and there was wax on her coat. The floor had been waxed by defendant's employee just prior to the accident. Thus, there was substantial evidence that defendant had created the dangerous condition.

In *Granucci* v. *Claasen*, 204 Cal. 509 [269 P. 437, 59 A.L.R. 435], there was substantial evidence that defendant had not inspected the wooden driveway where plaintiff fell for many months before the

ant's nurse and signed by Mr. Teed, who was defendant's operating superintendent. Plaintiff argues that the fact that the space following the word ''inspected'' on this report was not checked justifies an inference that ''the area in question had not been inspected prior to the accident.'' This is not a legitimate inference. The obvious fact is that the report contains no statement relative to inspection. It is simply silent on that question. It is not an admission that the area had not been inspected. The failure of the nurse to answer the question relative to inspection is understandable since this was a matter outside the normal scope of her activities.

In this connection, plaintiff argues that from the fact the nurse placed a checkmark in the blank space following the words ''Swept Daily'' on the report it may be inferred that the area in question was only swept once a day. Plaintiff then says '' [t]hat evidence of failure to sweep and inspect can establish liability in the absence of any evidence of time lapse.'' The cases relied on by plaintiff do not support her position (each is briefly analyzed in the footnote, *supra*).

Where, as in this phase of her argument, plaintiff is relying upon constructive knowledge of the dangerous condition on the part of defendant, the basis of liability is not on the failure to sweep the premises but the fact that the dangerous condition has existed for such a period of time that defendant, in the exercise of reasonable care, should have discovered it and remedied it. There must be substantial evidence, either direct or circumstantial, to support this conclusion before a judgment on this theory can be sustained. (*Girvetz* v. *Boys' Market, Inc., supra; Owen* v. *Beauchamp, supra; McKellar* v. *Pendergast, supra; Louie* v. *Hagstrom's Food Stores, supra.*)

Plaintiff's final contention is that defendant admitted

accident. Some of the spikes or nails had worked as much as three-fourths of an inch upward and the boards were somewhat loosened by the heavy vehicles which had used the driveway for many years before the accident.

In *Sanders* v. *MacFarlane's Candies*, 119 Cal.App.2d 497 [259 P.2d 1010], the evidence showed that the floor where plaintiff slipped was highly polished and was slippery by reason of an excessive amount of wax. Defendant's employee had polished the floor on the weekend before the accident, which occurred on a Monday.

In *Mattox* v. *Isley*, 111 Cal.App.2d 774 [245 P.2d 664], the evidence showed that the dangerous condition at the back of a seat in defendant's theater had not been remedied after the accident. Moreover, other seats in the theater were found to be in the same condition. The court ruled that a presumption of constructive notice could arise from factors such as these, as well as from mere lapse of time.

liability for plaintiff's injury by paying the ambulance bill and the doctor bill for the emergency call. This contention is without merit. Courts generally have held or recognized as inadmissible, evidence of payment, or offer or promise of payment, of medical, hospital and similar expenses of an injured litigant by the opposing party, in the absence of other circumstances indicating an admission of negligence. For a collection of these cases, see annotation, 20 American Law Reports 2d 291. A concomitant principle found in the cases is that, apart from the admissibility of such evidence, the act itself does not tend to imply an acknowledgment of liability. (*Winningham* v. *Travelers Ins. Co.*, 93 F.2d 520, 521; *Martin* v. *Burgess*, 82 F.2d 321, 323; *Potts* v. *Armour & Co.*, 183 Md. 483 [39 A.2d 552, 556]; *Norman* v. *Porter*, 197 N.C. 222 [148 S.E. 41, 42]; *Young* v. *Creegan* (La.App.), 23 So.2d 820, 821; *Ocean Acc. & Guar. Corp.* v. *Missouri Eng. & Contracting Co.* (Mo.App.), 63 S.W.2d 196, 199. See also Annot., 20 A.L.R.2d 291, 292 n.l.) Logic and reason support this view. If a contrary rule were adopted, it would tend to deter, instead of encourage, one who has injured another from giving aid. (*Biddix* v. *Rex Mills, Inc.*, 237 N.C. 660 [75 S.E.2d 777].) In a well known parable, the Good Samaritan placed an injured man upon his own beast, poured wine and oil into his wounds, and paid his maintenance charges at the inn. He generously promised to give even more, if necessary. No one would suggest that by his conduct he impliedly admitted that he was liable for the injuries the unfortunate man sustained. (See *Brown* v. *Wood*, 201 N.C. 309 [160 S.E. 281].) This conclusion is analogous to the doctrine, now well established, that evidence of precautions taken or repairs made after an accident is not admissible to show a negligent condition at the time of the accident. (*Helling* v. *Schindler*, 145 Cal. 303, 312 [78 P. 710].)

The judgment and the order are reversed, and the trial court is directed to grant defendant's motion for judgment notwithstanding the verdict.

Moore, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied August 15, 1957, and respondent's petition for a hearing by the Supreme Court was denied September 18, 1957. Carter, J., was of the opinion that the petition should be granted.