Filed 6/4/13  In re F.G. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re F.G. et al., a Person Coming Under the Juvenile Court Law. | H038919 (Santa Cruz County Super. Ct. Nos. DP002612, DP002613) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. C.G. et al., Defendants and Appellants. | |

F.G. (father) and C.G. (mother) appeal from a juvenile court judgment terminating their parental rights and selecting adoption as the permanent plan (Welf. & Inst. Code, § 366.26)[1] concerning their son, F.G. (born 2001), and daughter, S.G. (born 2003).  Father challenges the evidence supporting the juvenile court's rejection of his evidence and argument that the case came with the exception to termination described by section 366.26, subdivision (c)(1)(B)(i) (no termination if termination would be detrimental to the child because the parents maintained regular visitation and the child could benefit from continuing the relationship).  Mother agrees with father's argument and asserts that we must reverse the judgment as to her if we reverse the judgment as to father.  We affirm the judgment.

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

## LEGAL BACKGROUND

Section 366.26 sets forth the procedure for permanently terminating parental rights concerning a child who has been removed from parental custody and declared a dependent child of the juvenile court. The statute states that the court shall terminate parental rights if it "determines . . . by a clear and convincing standard, that it is likely the child will be adopted." (§ 366.26, subd. (c)(1).) If the court determines it is likely the child will be adopted, certain prior findings by the juvenile court (e.g., that returning the child to the physical custody of the parent would create a substantial risk of detriment to the physical or emotional well-being of the child) shall constitute a sufficient basis for the termination of parental rights unless the juvenile court finds one of six specified circumstances in which termination would be detrimental. (*Ibid.*) The first of these circumstances states: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Id.* subd. (c)(1)(B)(i).)

## FACTUAL BACKGROUND

In 1996, four older children had been removed from father and mother's custody and adopted. The children at issue were born in Mexico, and, after bringing them to the United States, father and mother hid the children from the Santa Cruz County Human Services Department (Department), did not enroll them in school, and later lied to the Department about the children's whereabouts. The Department ultimately placed the children in protective custody because "the children had suffered medical and dental neglect, emotional damage, lack of educational opportunities and they were not protected by the parents from physical harm, neglect and domestic violence." The juvenile court declared the children dependents and bypassed reunification services. The Department placed the children with a paternal aunt and uncle. Father had regular visitation; mother could not have contact because she was incarcerated. The Department ultimately reported that the aunt and uncle were committed to adopting the children. It

2

recommended that the juvenile court terminate parental rights and order adoption as the children's permanent plan. Father and mother contested the recommendation at a section 366.26 hearing in which father, mother, and the social worker testified. We rely on and appreciate the juvenile court's lengthy oral decision, which includes a succinct summary of the evidence that is relevant at this stage of the proceedings.

"They needed everything. Their basic needs were not being met. Their basic educational needs, medical needs, dental needs, and their need for safety and stability were not being met, sadly. And while the parents love them and that drove them to keep them from the world, and also drove the children into exile and an existence where initially [son] was pre 1st grade as a ten-year-old in his development. The children were really pre, preschool in their development and their basic learning skills. [¶] They've taken off. They're doing really well. [¶] In this case the parents are asking me to evaluate the bond with the parents in order to halt or hold back the stability that an adoptive home would provide. If the Court finds the children to be adoptable, which is the highest order of preference for permanency, the Court must, must, not may, but must terminate the parental rights in order to provide the children that highest level of permanency unless there is a compelling reason for determining that termination of parental rights would be detrimental to the children. [¶] And while the parents have through the facilitation of other maintained regular contact with the parents [*sic*], those visitations are limited. And the visitation--and while the natural interaction between a natural parent and a child will always confer some incidental benefit to a child . . . the relationship really arises from a day-to-day interaction, companionship and shared experience . . . . [¶] And so that relationship of a day-to-day interaction, companionship and shared experience was a very narrow one with parents, as I said, living in an isolated experience, hiding away from anybody that might take the children away. [¶] The parent, either parent--neither parent, I should say, today has been able to show a compelling reason to show the Court that they occupy such a parental role that the emotional attachment is both positive and significant,

3

and that they are maintaining a parental role and taking care of the children's needs in this case. The Court must under the cases cited by County Counsel look at whether or not the benefit from continuing the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new adoptive parents. The Court therefore is balancing the strength and quality of the natural parent relationship in a tenuous placement, meaning with legal guardianship with parents, I'm not exactly sure what role they would even have. [¶] So looking at balancing an ongoing relationship with the parents in a tenuous placement under a legal guardianship against the security and sense of belonging in an adoptive family is, in my opinion, unfortunately a simple choice for this Court to make. [¶] The children need to look to the parents for physical care, nourishment, comfort, affection, stimulation, safety. They aren't able to. They haven't been able to. [¶] . . . [¶] So, therefore, the Court is unable to find that the burden has been proven by either parent that would justify a finding of a compelling reason to set aside a stability that the adoption would provide for the children."

## DISCUSSION

Father contends that "the findings and orders . . . was [*sic*] unsupported by substantial evidence" because he "established, with each child, a parent/child relationship warranting preservation." Father's analysis is erroneous.

"[T]he burden [of proof] is on the party seeking to establish the existence of one of the section 366.26, subdivision (c)(1) exceptions to produce that evidence." (*In re Megan S.* (2002) 104 Cal.App.4th 247, 252.)

To meet the burden of proving the section 366.26, subdivision (c)(1)(B)(i) exception the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits--the parent must show that he or she occupies a parental role in the life of the child. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.)

4

As is apparent from the way father frames his contention, father is essentially urging that there was insufficient evidence to support the juvenile court's finding against his position because evidence supports his position. We see this type of presentation in dependency cases too frequently and are constrained to offer the following.

"We generally apply the familiar substantial evidence test when the sufficiency of the evidence is at issue on appeal. Under this test, ' "we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . . 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party*, *and disregards the contrary showing*.' [Citation.] All conflicts, therefore, must be resolved in favor of the respondent." ' [Citation.]

"But this test is typically implicated when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence. In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case (*Oldenburg v. Sears*, *Roebuck & Co.* (1957) 152 Cal.App.2d 733, 742 [trier of fact is the exclusive judge of the credibility of the evidence and can reject evidence as unworthy of credence]; *Hicks v. Reis* (1943) 21 Cal.2d 654, 659-660 [trial court is entitled to reject in toto the testimony of a witness, even if that testimony is uncontradicted]).

"Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a

character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528.)

Here, as in many dependency cases, the case posed evidentiary conflicts. And, as is common in many dependency cases, this case obligated the juvenile court to make highly subjective evaluations about competing, not necessarily conflicting, evidence. As reflected in the juvenile court's ruling, the juvenile court considered the conflicting, competing evidence and essentially discounted father's evidence in concluding that father had failed to carry his burden of proof. It is not our function to retry the case. We therefore decline father's implicit invitation to review the record so as to recount evidence that supports his position with the object of reevaluating the conflicting, competing evidence and revisiting the juvenile court's failure-of-proof conclusion. This is simply not a case where undisputed facts lead to only one conclusion.

In short, where, as here, the juvenile court's ruling is against the party who had the burden of proof, it is almost impossible for the party to prevail on appeal by arguing that the evidence compels a ruling in his or her favor.

## DISPOSITION

The judgment is affirmed.

6

_____
              Premo, J.

WE CONCUR:

_____
       Rushing, P.J.

_____
       Elia, J.